JOHN N. NOYES v. M. B. WHITE, *et al.*

1. NOTES AND 'MORTGAGE; *Assignment; Priorities.* A mortgagee holding two notes, secured by one mortgage, can transfer one note and the mortgage, so as to give that note priority in satisfaction out of the mortgaged property.

2. ―――――― An indorsement of the one note, with an assignment of "all the right, title and interest of the mortgagee in the mortgage" will be sufficient in the absence of all circumstances indicating a contrary intention, to give to the holder of such note priority.

3. PROTEST DAMAGES. Before protest damages can be recovered, there must be such demand and notice as will charge the indorser.

*Error from Douglas District Court.*

ACTION brought by *Noyes* to foreclose a mortgage. On the 4th of April 1870, *M. B. White*, and *L. S. Steele* and wife, executed to *Richard Albrey* a mortgage to secure four promissory notes of that date, as follows: One for $500, payable in three months; one for $1,000, payable December 25th 1870; one for $400, payable January 20th 1871, and one for $1,000, payable in one year from date. On the 22d of June 1870 the $400 note, the third in order of maturity, was transferred by *Albrey* to *Griffith & Duncan*. On the next day (June 23d) the two $1,000 notes, being the second and last in order of maturity, were sold and transferred by *Albrey* to *James Shearer*, and at the same time the *mortgage* was assigned to *Shearer*. (Said assignment is set forth in full in the opinion.) Said assignment was recorded at 3 P.M., June 29th 1870. On said 29th of June the $500 note, the one maturing first, was sold and transferred by *Albrey* to the plaintiff, *John N. Noyes*. After the note held by him had matured, *Noyes* brought his action thereon, and to foreclose said mortgage, making *White*, and *Steele* and *wife*, and *Albrey*, and *Shearer*, and *Griffith & Duncan*, defendants. The petition set up the facts, and demanded judgment against *White* and *Steele*, as makers, and *Albrey*, as indorser, for the amount due on the note, and for the sale of the mortgaged premises, and application of the

proceeds to the payment of all four notes, etc. *Shearer*, and *Griffith & Duncan*, answered, that said *Noyes* had no interest in said *mortgage*, or if he had any interest therein it was only a right to any money that might be left after paying and satisfying the amounts due said *Shearer* and *Griffith & Duncan* on the notes held and owned by them; and they asked that the moneys arising upon the sale of the mortgaged premises should be first applied in satisfaction of their claims. The other facts sufficiently appear in the opinion. The action was tried at the June Term 1871, and the district court rendered judgment against *White, Steele,* and *Albrey,* as follows: In favor of *Shearer,* for $1,186.96; in favor of *Griffith & Duncan,* for $476.40; and in favor of *Shearer,* (a second judgment,) for $1,123.61. Said court found that there had not sufficient notice of the protest of the note held by *Noyes* been given to *Albrey,* as indorser, and so gave judgment in favor of *Noyes* against *White* and *Steele,* as makers, for $561.80. Judgment of foreclosure and sale of the mortgaged premises was also rendered, ordering and directing "that the proceeds of said sale be applied, *first,* to pay the costs of said sale and of this action; *second,* to the payment of said judgment of $1,186.96 in favor of said *Shearer; third,* to the payment of said judgment of $476.40 in favor of said *Griffith & Duncan; fourth,* to the payment of said judgment of $1,123.61 in favor of said *Shearer; fifth,* the balance, if any, to the payment of said judgment of $561.80 in favor of plaintiff, *Noyes,*" and the balance, if any, to be paid to the mortgagors. *Noyes* excepted; and a new trial being refused, he brings the case here on error for review.

*James M. Hendry,* for plaintiff in error:

1. By a transfer or assignment of the indebtedness secured by a mortgage, the interest in the mortgaged premises is also assigned and transferred: 4 Kent, 193; 6 Mich., 70; 1 Johns., 580; 5 Cowen, 202; Walker's Ch., 251; 10 Iowa, 262; 38 Mo., 213; 13 Ohio St., 419; 4 B. Mon., 417; 7 Ind., 140; 29 Ill., 92.

2. The assignment or transfer of the mortgage, or a transfer or conveyance of the mortgaged premises, in itself, without at the same time a transfer of the indebtedness secured by the mortgage, is a nullity and of no meaning. 47 Barb., 253; 11 N. H., 275; 19 Johns., 325; 5 Johns. Ch., 570; 36 N. Y., 44; 10 Iowa, 262; 7 Ind., 140; 4 Kent, 194; 17 Abbott, 342.

3. Where several notes, maturing at different times, are secured by the same mortgage, upon a sale of the mortgaged premises, the proceeds are to be applied in payment of the notes in order of their maturity. Such is the rule, whether the notes have been transferred or not, and whether transferred to one, or several different persons, and without regard to the date of the different transfers: 33 Ill., 481; 7 Ind., 140; 13 Ohio St., 419; 38 Mo., 320; 7 Wis., 566; 10 N. H., 466; 9 Iowa, 163.

4. We would ask the court in considering this question to keep in view the following matters: 1st.—That it is the practice to assign the mortgage to the assignee of the last note, so that such assignee can, upon the payment of the last note, enter the satisfaction of the mortgage. 2d.—That there is no evidence of any agreement that the second and last notes were taken on consideration that the first note should be postponed to them, or that the postponement of the first note was an inducement to the purchase of the second and last notes.

5. We also claim as error, that the court did not allow the plaintiff the six-per-cent. damages provided by statute in cases of protest. The protest and notice being distinct and separate acts, and the statute providing for damages in cases of protest of notes, the question as to sufficiency of notice could not affect the statutory damages.

*Riggs & Nevison,* and *Thacher & Banks,* for defendants in error:

When several notes secured by the same mortgage are assigned, ordinarily they are to be paid out of the proceeds of the mortgaged premises *pro rata:* Walk. Ch., (Mich.,) 251; 6 Cal., 478; 17 S. & R., 400; 21 Vt., 331, 550; 9

Cowen, 747.    It will not be disputed that the mortgagee might, while owning all the notes and the mortgage, cancel the mortgage as to one, or all of them; and if he should cancel the mortgage as to any of the notes, while so owning the notes and mortgage, can it be maintained that a purchaser of said note, after such action on the part of the mortgagee, would acquire any interest in the mortgaged premises?    If he had a right to release the mortgage security while he owned all the notes, then he had a perfect right to release it as to any of the notes then owned by him.    If he could release the mortgage security as to any of the notes owned by him, he could, while he so owned the notes, by assigning any of the notes and all his interest in the mortgage then owned by him, transfer to said assignee of such notes and mortgage, the right to have his (the assignee's) notes first paid out of the mortgage security, even though they were the last notes to become due.    The mortgagee, by assigning said notes and all his interest in the mortgage, would give to the assignee thereof a priority of payment over any notes retained and then owned by him. 8 Metc., 19; 6 B. Mon., 408; 9 Vt., 299; 1 Humph., 537; 9 Porter, 547; 6 Gray, 564.

When the mortgagee assigns a part of the notes, he may agree that the assigned notes shall be first paid from the mortgage fund or property, which agreement shall bind subsequent assignees of the other notes; and this agreement may be implied from the circumstances of the case, as well as expressed. 23 Miss., 173; Hilliard on Mortgages, 253; 6 Cal., 53; 2 Atkins, 212; 9 Cowen, 752; 9 Porter, 547; 23 Cal., 30; 19 Wend., 410.    It being clear that the mortgagee has a right, by assignment, to give to the assignee of one of the notes, preference in the payment of the note from the mortgaged property, and that this agreement may be implied from all the circumstances of the case, what then was the intention of Albrey, at the time he sold the two notes to Shearer?    He had sold one note of $400 to Griffith & Duncan, and then held three notes, one for $500 due in about twenty days, and two for $1,000 each, due in about six and

ten months. He then proposed to sell to Shearer the two notes which had about six and ten months to run, and to keep the one due in a few days. Now to induce Shearer to purchase the two large notes he agreed to assign all his right, title and interest in the mortgage to Shearer, and thereby render the payment of those notes more secure by relieving the property from the payment of the $500 note. But it is claimed that the $500 note was afterwards sold by Albrey to the plaintiff, and the plaintiff when he made such purchase acquired a right to have his note first paid out of the mortgaged property. Could Albrey, at the time he sold said note, convey a greater right than he himself had? It is claimed that the plaintiff examined the records of mortgages, but we claim that this was not enough, for in this state we have no law requiring the registration of assignments of mortgages, nor none making such record, if it was made, notice. If he had wished to protect himself from anything of that kind he should have required Albrey, at the time he offered to sell the note, to produce his mortgage for plaintiff's inspection; and if the plaintiff failed to do this the rule of *caveat emptor* applied to him in full force. The finding of the law and the judgment of the court was therefore correct as to the order in which the notes should be paid.

The opinion of the court was delivered by

BREWER, J.: Can a mortgagee, holding two notes payable at different dates, and secured by one mortgage, transfer before the maturity of either, the note last to become due with the mortgage, so as to give to such last note priority in satisfaction out of the mortgaged property? We think he can, both on reason and authority. Both notes and mortgage are subjects of contract. The only parties originally having rights are the mortgagor and mortgagee. To the mortgagor, having pledged his real estate as security for both notes, it is immaterial which has priority, so long as he is not called upon to pay either until it is due. Why then cannot the mortgagee contract with a purchaser of the second

note that he may have priority in the security? Who suffers wrong? Is it not a legitimate subject of contract? Is it against public policy, immoral, or prohibited by statute? Clearly not. A mortgagee, holding notes, can release the mortgage and still hold valid notes; he can release the mortgage as to one note, and hold it good as to the rest. He can release part of the mortgaged property from the lien of the mortgage, and hold it good as to the balance. So may he give to the purchaser of one note priority over all the other notes in the security. In *Wright v. Parker*, 2 Aiken, 212, the chancellor says: "If Mann chose to assign to Sherman all his interest in the mortgaged premises as security for the payment of the two notes therein assigned to him, he had a right so to do; and in such case nothing would remain for his after-assignment to the orator to operate upon." And in *Grattan v. Wiggins*, 23 Cal., 30, the supreme court says: "It is clear that the mortgagee has the right by agreement to fix the rights of the holders of the several notes to the mortgage-security, and such an agreement may be implied from the circumstances of the transfer." See also *Bryant v. Damon,* 6 Gray, 564; *Bank v. Tarleton*, 23 Miss., 123; *Lyndon v. Keith*, 9 Vt., 299.

Did the mortgagee in this case by his transfers and agreements give any priority? The district court found that he did. There were four notes. While holding the first, second, and fourth, and shortly before the maturity of the first, he indorsed the second and fourth, and also transferred the mortgage with this assignment, to-wit:

"In consideration of the sum of two thousand dollars to me in hand paid, I do hereby sell, transfer, and assign to James Shearer, all my right, title, and interest in and to the within mortgage.          RICHARD ALBREY.

"*Lawrence,* June 23d, 1870."

At the time of this assignment Albrey had a right and interest in the mortgage so far as it gave security for three notes. *All* of this right and interest he assigned. Does not this indicate that so far as the assignee is concerned it was

intended that he should have the full benefit of the mortgage, as security? Again, why assign the mortgage at all? The indorsement of the note transferred its proportionate interest in the mortgage-security. Counsel says it was that the assignee might release the mortgage, and that the rule is to assign the mortgage to the indorsee of the last note. If this be the rule, it is a rule broken as often as kept. For a mere delivery of the mortgage, with an indorsement of the note, is as common as a written assignment of the mortgage. There is nothing in the findings to conflict in the slightest degree with this view of the intention of the parties. We have not the testimony before us, and there may have been much in that to support the finding of the court as to the intention and effect of this assignment. In the case from California, heretofore cited, the court uses this languaeg: "In this case the court found that at the time of the transfer and delivery of the note to Foster, Cook also assigned and delivered the mortgage to Foster to secure him in the payment of the $5,000 called for by the note. This shows a special agreement between Cook (who then held all the notes) and Foster, by which the latter was to hold the mortgage as security for the payment of the note then assigned to him, thereby giving him a right to full payment from the proceeds of the mortgage." See also other cases cited.

We think then that by the assignment to Shearer priority was given to him. The mortgagee could not then by any subsequent indorsement of the first note destroy that priority which he had transferred to Shearer. No question of notice or knowledge is raised in the findings of fact, and none therefore need be considered by us. It is true, one of the conclusions of law states that common prudence requires the purchaser of a mortgage note to examine the mortgage, and that an inspection of the records is insufficient. Upon what facts the district court based this enunciation of law, we are nowhere informed, and hence care not to discuss any abstract proposition.

It is alleged as error that protest damages were not allowed

Gulf Railroad Co. v. Shepard.

to plaintiff. It seems to be conceded that the notice was insufficient, but counsel claims that *protest* and *notice* are distinct and separate acts, and that the statute allows damages for *protest.* Notice is necessary to charge the indorser. Without it a demand of payment, and protest for nonpayment, avail nothing. *Tate v. Sullivan*, 30 Md., 464. It seems to us that under the 14th section of the act concerning bonds, notes and bills, (Gen. Stat., p. 116,) there must be sufficient to charge the indorser before any damages can be claimed. Where there is no indorser, though the note be protested, no damages can be recovered. *German v. Ritchie*, ante, p. 106. The judgment will be affirmed.

All the Justices concurring.