Curtis v. Buckley.

LEANDER CURTIS V. ROBERT R. BUCKLEY.

1. PLEADING; *Improperly Dividing Cause of Action.* The case of *Andrews v. Alcorn,* 13 Kas., 351, with reference to stating one cause of action in two counts, referred to and followed.

2. TITLE BOND, OR CONTRACT; *Interest of Purchaser; Specific Performance; Lien of Purchaser, as against his Transferee.* Where a railroad company which owns a certain piece of land sells the same to K., and K. to C., and no deeds of conveyance are executed, but merely a simple instrument in writing is executed between the railroad company and K.

providing that if certain things be done by K., the railroad company will convey the land to K. or to his assigns, and K., before he does all of said things sells said land to C., and assigns said instrument to C., and then K. and C. deposit said instrument with a third person, to be held by said third person for K. and C. as a security in the nature of a · mortgage for the payment of a certain promissory note given by C. to K. for a portion of the purchase-money for said land: *Held*, that K., by virtue of his contract with the railroad company obtained such an interest in said land that by performing his part of the contract he could have compelled the railroad company to convey to him a full and complete title to said land, both legal and equitable; and that when he sold the land to C. he reserved, by virtue of the whole transaction, a lien on said interest, and that he may· now in an action on said note, and to foreclose said lien, have a judgment for the amount of the note, and that the land be sold to satisfy said judgment, although the transaction between the railroad and K. may have been such that no title or estate, either legal or equitable, passed from the railroad company to K., or from K. to C. Said *interest* in said land is sufficient to uphold the action, although said interest may not of itself amount to any *estate* or *title*.

3. PROTEST FOR NONPAYMENT; *Notarial Protest; Protest Damages.* Where a promissory note has been protested for nonpayment, a statement in the notarial protest that due notice was given to the indorser, and showing how it was given, is no evidence that such notice was given. The case of *Noyes v. White*, 9 Kas., 640, with reference to the recovery of protest damages where the indorser has received no notice of the nonpayment of a promissory note, referred to and followed.

*Error from Crawford District Court.*

FORECLOSURE, brought by *Buckley* against *Curtis*. Trial, and judgment in favor of *Buckley*, at the May Term 1873, for $289.20, (including $17.80 protest damages,) and that if said sum be not paid, etc., the mortgaged premises be sold, etc. *Curtis* brings the case here. The facts are fully stated in the opinion.

*John T. Voss*, for plaintiff in error:

The petition of Buckley, defendant in error, evidently intended to state two distinct and separate causes of action — the first for a recovery of a money judgment upon the promissory note set forth in the petition, and the second, to avail

himself of the contract and bargain verbally made in reference to placing the contracts in escrow. He relies upon the note as the first cause of action, evidenced by writing. And for the second, he relies upon the verbal contract made at the time the railroad contracts were placed in the hands of Playter. He separately states and numbers each. He demands a separate judgment in each — the first an ordinary money-judgment upon a promissory note, the second a judgment or decree as in actions to foreclose a mortgage. But this is error. There was no mortgage, hence only one cause of action, and the court, on motion of plaintiff in error, should have stricken out the second count (so called) as surplusage.

The record contains all the evidence, and also a special finding of the facts by the court. Let us summarize these facts: One Kerchner owned the several railroad land-contracts set forth in the record. These contracts he sells and assigns to Curtis for the sum of $450. Curtis pays $200 cash, and executes and delivers his promissory note to Kerchner for the $250 remaining unpaid. Curtis, to secure this note, talked of executing a mortgage on the land mentioned in these contracts, but desired to avoid the expense of the mortgage. The parties were then informed that this expense could be avoided by a delivery and placing in escrow these several railroad contracts; that this would constitute a *mortgage*. The contracts are so delivered, and with an agreement, that if Curtis paid the note when due he should receive the contracts, otherwise they were to be delivered to Kerchner. The petition alleges a forfeiture, and there seems some dispute about it as to whether upon failure to pay the note there was to be a forfeiture, or cancellation of the assignment to Curtis. But the court settles this question by simply finding that the contracts were placed in the hands of Playter as security for the payment of the note, and to be delivered to Kerchner on Curtis' failure. Kerchner transfers the Curtis note to Buckley, with his supposed "lien" on said contracts as security. Now these railroad contracts are not title papers to this land. They convey no interest in the realty. They are bare and

naked promises *to sell* in the future—not a present *sale*. The contracts pass no *title*, no *estate*. So, the conditional transfer by Kerchner of these contracts to Curtis passed no title, estate, or interest in the land to Curtis, and constituted no "mortgage" security for Curtis' note, either in the hands of Kerchner or Buckley. The idea of calling these railroad contracts title papers, and depositing them in escrow, and foreclosing as an equitable mortgage on real estate, would deserve, it seems to me, to be treated by courts and lawyers with ridicule. The so-called second cause of action then performs no office whatever. It asks to foreclose nothing. Then if these contracts gave no interest in the land, how stands the case? The contracts were by Playter turned over to Buckley, Kerchner's assignee. This changed no right. Buckley held Curtis' note, and he held these contracts as "collateral security, for what they were worth"—rather precarious security. But Buckley undoubtedly had a clear right to the possession of these contracts, and the court would have had the right to order and direct a sale of them, subject to all the rights of the railroad company. The only difficult question in the whole case arises on his security, and his remedy thereon. If it was goods and chattels, there is no doubt about his right to sell for payment of the debt. If it was real estate, the right is equally clear. On these two propositions there can be no doubt. If the contracts appeared to be utterly valueless, then of course no order would be made. But they have been treated by the parties to this transaction, as of the value of $450. The judgment should have been for the face of the note and interest, and an order directing the sale of these contracts in the same manner as personalty is sold on execution, and the proceeds applied first to payment of the costs of suit, and next to Buckley's debt and interest, and the overplus, if any, paid to Curtis, and if contracts failed to bring amount of Buckley's claim and costs, then judgment for balance against Curtis.

Another error which we think Curtis justly complains of, is the allowance of notarial protest costs and damages. The

notarial protest is void, because there was no notice served
under it.    There is no evidence in this record showing any
notice served, or that one was ever even made out.    We have
a statute making a proper notarial protest evidence of demand
and refusal.    But demand and refusal is one thing, and the
service of notice another and very different thing; and the
interpolation of a statement in this protest that notices were
left in some post-office proves nothing.    It is not evidence of
any fact except as made so by the statute, and ·the statute
does not make it evidence of notices or of the service thereof,
and the court does not find any such notice, yet renders judg-
ment for six per cent. damages.

*Playter & Pursel*, for defendant in error:

Curtis knew that the title papers had been conditionally
delivered to Playter, for him, (Curtis,) and that the delivery
would become absolute at any time on payment of the pur-
chase-money.

It is not denied that Kerchner owned the equitable title to
the said land.    It is not denied that he sold the same to Curtis.
It is not denied that Curtis, at the time this action was brought,
was in possession of said land.    It was not claimed that Curtis
had sold the said land to any person.    Therefore this judg-
ment and order could not interfere with the rights or equities
of any third person.    It was purely a question between the
grantee and the assignee of the grantor.    Buckley was a *bona
fide* holder of the said note given by Curtis for the purchase-
money.    The grantor and grantee expressly stipulated that
this purchase-money should be a lien on this land.    Courts
always carry out the intention of the parties to a contract,
where it can be done.    The judgment and order works no
damage to Curtis.    It is simply the result of his agreement.

*W. C. Webb*, also for defendant in error:

The value of *Kerchner's* title, under his contract, is not a
question before the court.    Kerchner and Curtis regarded it
as valuable, and negotiated accordingly.    Afterward Kerchner

and Buckley regarded it as valuable, notwithstanding the rights and equities of Curtis, under the assignment to him, and they negotiated with that understanding. Kerchner is not interested in the contest between Curtis and Buckley. Curtis does not appear (from brief of plaintiff in error,) to object to the judgment *in personam;* and his counsel does not seem to claim that Curtis can have the full benefit of the assignment to him until he pays the $250 (for which said personal judgment was rendered,) but he complains of the decree of the court by which *his* interest *as assignee* is held as security for the payment of said debt. There was no error in the decree. Curtis acquired Kerchner's right and title, *subject* to the payment of the $250 note, in like manner as if Kerchner (having title) had sold by title bond; and the assignment being deposited in escrow had the same effect as a title bond, where the equitable title passes to the vendee (Curtis) and the legal title is retained in the vendor (Kerchner) as security for the payment of the unpaid purchase-money. The vendor (Kerchner) thus holding the title, (that which the parties have between themselves acted upon and treated as title,) he sells that title to Buckley, and of course could sell only such rights and interests as remained in him. One of these rights was to *foreclose the equities of Curtis* if Curtis did not pay the note. Such foreclosure is in the nature of a mortgage foreclosure, requiring that the amount of the debt shall be ascertained, followed by a decree that if said debt is not paid, etc., the interest of the debtor (Curtis) in the land shall be sold. Such is legally this case. Curtis has no cause for complaint.

The opinion of the court was delivered by

VALENTINE, J.: This was an action on a promissory note, and to foreclose a certain supposed equitable lien on certain real estate. The principal question involved in the case is, whether any such lien has any actual existence. Some other questions however are suggested by counsel which we shall also consider.

I. Upon the point made by counsel for plaintiff in error

(defendant below) that there were two causes of action attempted to be stated in the petition of the plaintiff below, while only one was in fact stated, and that the court below erred in overruling a motion of the plaintiff in error to strike out the second supposed cause of action, and also erred in overruling a demurrer of the plaintiff in error to said second count, see *Andrews v. Alcorn*, 13 Kas., 351. That case was a much stronger case for reversal upon such a point than this, but still we held in that case, as we must hold in this, that no substantial error was committed by the court below.

II. The main question in the case is, do the facts of this case constitute an equitable lien upon said real estate? The facts are substantially as follows: The Missouri River, Fort Scott & Gulf Railroad Company sold a certain piece of land to Benjamin Kerchner. The purchase-money was not all paid down, and no deed of conveyance was executed, but the parties reduced to writing the nature and character of their transaction; both parties signed said writing, and the instrument embodying the same was then placed in the possession of said Kerchner. The instrument provided for Kerchner taking possession of the land, cultivating it, making improvements thereon, paying the deferred payments for the land, and the company making a deed of conveyance to him or his assignee. Afterward Kerchner sold said land to Leander Curtis, plaintiff in error, received a portion of the purchase-money down, and took a promissory note for the balance. Kerchner himself, having no deed for the land, merely assigned his contract with the railroad company to Curtis. It was suggested that Kerchner should take a mortgage on the land from Curtis to secure the payment of said promissory note, but the parties in lieu thereof finally agreed to deposit said written instrument which Kerchner had received from the railroad company with a third person, to be held by such third person until Curtis should pay said promissory note, and then to be delivered (with the assignment thereon) to Curtis. The parties understood that said written instrument was to be held by said third person as a security for the pay-

ment of said promissory note, and to answer the purposes of a mortgage. Afterward Kerchner sold and assigned said promissory note to Robert R. Buckley, defendant in error. This note was not paid at maturity, was protested, etc., and then Buckley commenced this action against both Kerchner and Curtis, asking for a judgment on the note for the amount thereof with interest, protest fees and damages, and also asked to have said land sold to satisfy said judgment. Kerchner was not served with summons, and the trial proceeded against Curtis alone. Judgment was rendered by the court below against Curtis, as asked for by Buckley, and Curtis now asks to have that portion of the judgment reversed which ordered the land to be sold, and which gave to Buckley protest fees and damages.

It seems to be admitted that the railroad company had a good title to said land at the time they sold it to Kerchner; but it is claimed by the plaintiff in error that neither Kerchner nor Curtis ever had any title, legal or equitable. Whether either of them ever had any such title or not, we do not think it is necessary now to decide. Kerchner had a legal and valid contract with the railroad company whereby he could obtain title, both legal and equitable, merely by fulfilling his contract. When he complied with all the conditions of said contract he would surely have the equitable title; and having the equitable title, he could surely compel the railroad company to convey to him the legal title. Whatever Kerchner's interest in the land may have been, he had the power at his own option to obtain a complete and absolute title. This interest he transferred to Curtis, reserving merely a lien thereon for the payment of said promissory note. This lien of course does not amount in law to any estate or title, either legal or equitable; for even a mortgage in this state does not amount to any estate or title, either legal or equitable; (*Chick v. Willetts*, 2 Kas., 385;) and an equitable lien of this kind is probably of no higher character than a mortgage. It is claimed by counsel for plaintiff in error, substantially, that an equitable lien on real estate, where it has

any real existence, is an interest in land, and cannot be created merely by parol; that the statute of frauds, (Gen. Stat., 505, § 5,) prohibits such a thing. All of this we agree to; but still the statute of frauds does not attempt to prohibit the creation of equitable liens by operation of law, nor does any other statute. *Stevens v. Chadwick*, 10 Kas., 406. Such a lien should of course be in accordance with the contract and understanding of the parties affected by it, but still it may sometimes result by operation of law from the transactions of the parties almost wholly independent of the contract that may be made between them. It results however from the *whole* transaction, including all the contracts, agreements, and understandings of the parties, parol or otherwise. The lien in the present case was not created merely by parol. It resulted by operation of law from the whole transaction between the parties. It can hardly be said however to have been *created* at all when Kerchner sold his interest in the land to Curtis. It was more properly *reserved* by Kerchner at that time as a part of the interest which he already had.

III. The evidence shows that the note was protested for non-payment by authority of Buckley, the owner thereof. This was sufficient. But the evidence does not show that any notice of the demand of payment, or the failure to pay, was ever given to Kerchner, the indorser of the note. Indeed, there was no legal evidence even tending to prove this offered to be introduced. While the statute provides, that "A notarial protest shall be evidence of a demand and refusal to pay a bond, promissory note, or bill of exchange, at the time and in the manner stated in such protest, until the contrary is shown," (Gen. Stat., 117, § 18,) yet no statute provides that such protest shall be any evidence that the indorser ever received any notice of such demand and refusal. And in the absence of such a statute no mere statement of the notary, in his notarial protest, that he gave the required notice, can be any evidence of such fact, or indeed of any fact material to the case. And where no such notice has been given, and the indorser through want of such

30—14 KAS.

notice has not been made liable on the note, no protest damages can be allowed. (*Noyes v. White*, 9 Kas., 640.) The court below in this case allowed protest damages, and for this error the judgment must be reversed and new trial ordered, unless the plaintiff below will remit the protest damages. If the plaintiff below shall remit protest damages, then the judgment will be affirmed.

The costs of this court will be equally divided between the parties.

All the Justices concurring.