EMILIE V. PRESTON, APPELLANT, V. EDGAR M. MORSMAN, JR., TRUSTEE, ET AL., APPELLEES.

FILED DECEMBER 20, 1905. No. 13,834.

1. **Mortgages: ASSIGNEE, RIGHTS OF.** A mortgagee may, by agreement, fix the rights of his assignees of the notes secured by a mortgage to the mortgage security, and such an agreement may be implied from the circumstances of the transfer.

2. **Res Judicata:** FRAUD.  A decree of a court vested with jurisdiction over the subject matter and the persons in interest, fixing the status of a series of notes secured by a single mortgage, is binding on one who, in a subsequent action, attempts to avoid the effect of the decree, where it appears that the transfer of the note involved in the later proceeding was fraudulent as against the holders of the other notes.

APPEAL from the district court for Douglas county: CHARLES T. DICKINSON, JUDGE. *Affirmed.*

*Fawcett & Abbott,* for appellant.

*Edgar M. Morsman, Jr.,* and *Charles F. Tuttle, contra.*

JACKSON, C.

On the 3d day of December, 1892, George F. Orchard and Sarah M. Orchard made and delivered to William Preston three promissory notes, one for the sum of $5,000, payable three years after date; one for the sum of $5,000, payable four years after date, and one for the sum of $6,000, payable five years after date, each to draw interest at the rate of 7 per cent. per annum, payable semiannually. For the purpose of securing the payments, the makers of said notes, on the 20th day of December, 1892, executed and delivered to the payee, William Preston, a mortgage on certain real estate in Douglas county Nebraska. The mortgage recited the execution and delivery of the notes, giving the dates of payment of both principal and interest, and contained this provision: "But if said sums of money, or any part thereof, or any interest thereon, is not paid when the same is due, then in that case the whole of said sum and interest shall, and by this indenture does, immediately become due and payable." Afterwards William Preston borrowed of the Blackstone National Bank of Boston, Massachusetts, $5,000, and assigned to this bank as collateral security the note secured by said mortgage which matured three years after date. He also borrowed of the First National Bank of Mauch Chunk, Pennsylvania, the sum of

$5,000, and assigned to that bank as collateral security the note secured by said mortgage which matured four years after date. William Preston defaulted in the payment of his indebtedness to the bank of Mauch Chunk, and the Orchards defaulted in the payment of interest on the notes secured by the mortgage, and on the 28th day of February, 1896, the bank of Mauch Chunk instituted proceedings in the district court for Douglas county against George F. Orchard, Sarah M. Orchard, William Preston and the Blackstone National Bank, for the purpose of foreclosing the mortgage securing the Orchard note, which it held as collateral. The petition contained the usual allegations where the relief sought is the foreclosure of a mortgage, and among the allegations was one that the defendant, William Preston, sold and transferred the said promissory note to the petitioner by a blank indorsement thereon. The plaintiff, with other relief asked for in his prayer, required an accounting of the amounts due on the three notes secured by the mortgage; prayed that the property might be sold under the decree of the court, and that the proceeds of the sale be applied, first, to the payment of the costs, second, to the payment of the sum found due the defendant, the Blackstone National Bank, and the amount due the plaintiff, *pro rata;* third, to the payment of such sum as should be found due the defendant, William Preston, as holder of the note for the sum of $6,000. Service was had upon the defendants, and George F. Orchard and Sarah M. Orchard were defaulted. The defendant, the Blackstone National Bank, answered, and by way of a cross-petition alleged facts entitling that bank to a foreclosure of the mortgage for the purpose of securing the payment of the $5,000 note which it held as collateral. By its cross-petition it made Alfred H. Preston and Walter G. Preston parties to the foreclosure proceedings, and caused summons to be served on said additional defendants. The cross-petition of the Blackstone National Bank recites, among other things, that the defendants, William Preston, Alfred H. Preston and Walter G. Preston, under

the firm name of William Preston & Company, executed and delivered to the bank their promissory note for $5,000, payable on demand, and also recites the assignment of the $5,000 Orchard note as collateral to secure the payment of the note of William Preston & Company, by the indorsement in blank of William Preston; that, when said note became due and payable, payment was duly demanded and refused and said note was duly protested. It showed a default by Preston & Company in the payment of their indebtedness to the bank, and the default of the Orchards in the payment of the collateral note. It asked for a foreclosure of the mortgage and a sale of the mortgaged premises; that, out of the proceeds of the sale, there first be paid the costs; second, the sums found due the plaintiff and defendant, the Blackstone National Bank, *pro rata;* third, such sum as should be found due the defendant, William Preston, as holder of the $6,000 note, and for personal judgment for the deficiency, if any, due the Blackstone National Bank, against William Preston, Alfred Preston and Walter G. Preston, and William Preston & Company.

To the petition William Preston filed a separate answer, admitting the execution and delivery of the Orchard note, but denied that the note was sold to the plaintiff by absolute sale; alleged that the note and mortgage were assigned to the plaintiff as collateral to secure the payment of his own $5,000 note, payable to the plaintiff, and asked that the court so find, and find that the legal title to the note was in him, but consented that the mortgage might be foreclosed in that action, and prayed that his rights in the premises might be protected, and that he should have every relief that justice and equity might require. William Preston also answered the cross-petition of the Blackstone National Bank, in which he denied that Alfred Preston and Walter G. Preston were partners in the firm of William Preston & Company, and alleged that he, William Preston, was the only person interested in the business of William Preston & Company, and alleged that the note of

William Preston & Company, made payable to the Blackstone National Bank, was executed and delivered by himself alone as William Preston & Company. He also alleged that he alone transferred the Orchard note to the Blackstone National Bank; that the Orchard note was assigned to that bank as collateral security only, and asked that the legal title to the note might be held to be in him alone; but consented to the foreclosure of the mortgage, and asked that his own rights in the premises be protected. Walter G. Preston answered separately the cross-petition· of the Blackstone National Bank, wherein he denied that either himself or Alfred H. Preston were partners in the firm of William Preston & Company, and denied that he was a partner of William Preston; denied that he was a member of any firm that executed and delivered to the said bank any of the papers mentioned in the cross-petition. He admitted that the Blackstone National Bank held the note executed by William Preston & Company, and that it held as collateral the Orchard note, and asked that he be dismissed with his costs.

Upon a trial to the court on the 27th day of December, 1896, the court entered a decree, finding that the Orchard note held by the plaintiff was assigned to that bank by the defendant, William Preston, as collateral security for the promissory note of said Preston, and determining the amount due the plaintiff on the·Orchard note. The court also found that the Orchard note held by the defendant, the Blackstone National Bank, was held· as collateral, and determined the amount due on that note. The court entered a decree of foreclosure, and directed the mortgaged premises to be sold, and that, out of the proceeds of the sale, there should first be paid the costs, second, the sum found due the plaintiff, the First National Bank of Mauch Chunk, and the sum found due the defendant, the Blackstone National Bank, *pro rata,* and any sum remaining after the satisfaction of the sums due the plaintiff and the Blackstone National Bank be held to abide the further order and decree of the court. The court also found

that, by reason of the indorsement of the Orchard note held by the plaintiff and the Orchard note held by the defendant, the Blackstone National Bank, by the defendant William Preston, said William Preston was personally liable for any deficiency that might remain after applying the proceeds of the sale to the payment of those notes.

Under this decree the mortgaged premises were offered for sale and bid in by Edgar M. Morsman, Jr., as trustee for the plaintiff and the defendant, the Blackstone National Bank. At the sale the sheriff was put into the possession of and read this notice: "In the District Court of the State of Nebraska, within and for the County of Douglas. The First National Bank of Mauch Chunk, Plaintiff, v. George F. Orchard et al., Defendants. Notice. To the purchaser or purchasers at sheriff's sale of the property in controversy in this action: You and each of you are hereby notified that Earnest Griffith claims a first lien for six thousand dollars ($6,000) upon the property in controversy in this action (describing it); that he claims said lien by reason of the fact that he is the holder of a note for six thousand dollars ($6,000) executed by George F. Orchard and Sarah M. Orchard, and secured by the mortgage upon said above described property which is sought to be foreclosed in this action. Lysle I. Abbott, Atty. for Earnest Griffith." This notice was returned by the sheriff with his report of the sale and filed by the clerk of the court on December 3, 1897. On December 4, 1897, the plaintiff and the defendant, the Blackstone National Bank, joined in a motion for an order confirming the sale, and for the execution and delivery of a deed. On January 6, 1898, the court ordered a confirmation of the sale and execution of a deed. The deed was duly executed and delivered to the purchaser, and was filed and recorded on January 18, 1898. Morsman, as trustee, entered into the possession of the premises, and has expended a considerable sum of money in the payment of taxes in order to preserve the property for the benefit of his clients. The Blackstone National Bank has subsequently sold its in-

terest in the property to the Mauch Chunk bank and received in consideration therefor the sum of $2,000, and has conveyed its interest to Morsman, trustee for the Mauch Chunk Bank. A portion of the mortgaged premises was afterwards conveyed to the Fred Krug Brewing Company.

William Preston is the father of Alfred Preston and Walter G. Preston. Emilie V. Preston, the plaintiff in this action, is the wife of William Preston, and is the mother of Alfred Preston and Walter G. Preston.

On the 18th day of October, 1901, Emilie V. Preston filed a petition in the district court for Douglas county, setting out the execution and delivery of the $6,000 note secured by the mortgage foreclosed in the former action, claiming to be the owner of the same; that she was the owner at the time of the commencement of the former action, and at all times since has been such owner and in possession thereof; that the Blackstone National Bank, the First National Bank of Mauch Chunk, and Edgar M. Morsman, Jr., trustee, had actual notice and full knowledge of the fact of such ownership. She made Edgar M. Morsman, Jr., as trustee, the First National Bank of Mauch Chunk, George F. Orchard, Sarah M. Orchard, William Preston, the Blackstone National Bank, Frederick Brommer, Fred Armbrust and Fred Krug Brewing Company, defendants. She prayed a foreclosure of the mortgage; that the mortgaged premises be sold, and that, out of the proceeds of such sale, she be paid the amount of the note. It was alleged in the petition that no part of the note had been paid, except interest instalments on June 3 and December 3, 1893, and June 3 and December 3, 1894.

Edgar M. Morsman, Jr., trustee, and the First National Bank of Mauch Chunk answered, and, among other defenses, pleaded the foreclosure proceedings hereinbefore related; the title acquired by Morsman, Jr., trustee, thereunder; that no assignment of the mortgage had ever been made by William Preston and entered of record in the

office of the recorder; denying any notice of an assignment of the $6,000 note to Emilie V. Preston; alleging that no such assignment was ever made, in fact; that, if such an assignment had been attempted, it was colorable only and made with the intent to defraud the creditors of William Preston; alleging that Morsman, Jr., purchased the real estate at the foreclosure sale without any knowledge that Emilie V. Preston claimed any interest in the property, the mortgage, the notes secured thereby, or claimed any part of the proceeds arising from the sale of said property; that he purchased said property for the sum of $12,000, as trustee for the First National Bank of Mauch Chunk and the Blackstone National Bank, and that the interest of said banks equaled the proceeds of said sale. They pleaded an adjudication in the decree of foreclosure; that the liens of the Blackstone National Bank and the First National Bank of Mauch Chunk were superior to the lien of William Preston by reason of his indorsements of the notes held by these banks; pleaded a sale of the interest of the Blackstone National Bank in the property to the Mauch Chunk Bank; pleaded a knowledge on the part of Emilie V. Preston of all the former foreclosure proceedings; pleaded that Emilie V. Preston was the wife of William Preston, the payment of taxes on the premises by Morsman, Jr., trustee, and the performance of valuable services in securing a reduction of the assessed valuation of the property at various times; services performed by said Morsman in resisting condemnation proceedings, wherein it was sought to condemn the property for boulevard purposes; pleaded the payment of costs in the former foreclosure proceedings, and prayed a dismissal of the plaintiff's petition; and, as an alternative, that, if the findings should be for the plaintiff, an account should be taken of the sums paid by Morsman, Jr., trustee, for taxes and for other expenses incurred, and that such sums be decreed to be a paramount lien on the property. The Fred Krug Brewing Company answered, setting out the purchase by them of a fractional part of the property in-

volved; the foreclosure proceedings before referred to; that their purchase was in good faith, without any knowledge of any claim on the part of Emilie V. Preston; praying that title to the fractional part purchased by them be confirmed, free of any lien on account of the claim by Emilie V. Preston. Replies were filed to these answers, in substance denying the allegations of the answers. There was a trial to the court, and a finding for the defendants. From the decree the plaintiff appealed to this court.

At the trial of the latter case there was offered and introduced in evidence a power of attorney from the plaintiff, Emilie V. Preston, to her son Walter G. Preston, authorizing Walter G. Preston, as such attorney in fact, to execute, convey, acknowledge and deliver by deed of trust, mortgage, bill of sale, or any other conveyance, any real estate or personal property that she then owned or might thereafter own, wherever the same was situated; to sign notes, checks, drafts or any other documents in her name, and to secure payment of the same by deed, mortgage, deed of trust, or any other conveyance upon any property, real or personal, granting full power to transact any and all business. This power of attorney was executed on the 23d day of July, 1895; was properly acknowledged and was recorded in the office of the register of deeds of Douglas county on the 11th day of January, 1896. The deposition of the plaintiff was taken and read in evidence, from which it appeared that, since the giving of the power of attorney, she had entrusted all of her business affairs to her son, Walter G. Preston, as such attorney. Walter G. Preston was called as a witness on behalf of the plaintiff, and testified that his mother had been incompetent to handle her own business by reason of nervous prostration; that it was necessary for some one to handle her business, and that she gave him a power of attorney; that he had attended to her business since 1891; that prior to the transaction with reference to the $6,000 note he had no recollection of transacting any business for his mother other than the payment of taxes on some property in Iowa; that on the 10th

day of January, 1896, William Preston gave him the $6,000 note, as attorney for Emilie V. Preston; that the note was given as part payment or reimbursement for what they called the home property, which, he stated, his mother owned; he did not remember the conversation which he had with his father at the time the note was delivered to him. From his evidence it also appears that the record title to the home property (a residence property in the city of Omaha) was in his father; that his father had repeatedly stated in his presence that it belonged, however, to his mother; that he had given it to her as a wedding present, although no conveyance had ever been made; this home property had been several times mortgaged, his mother joining in the mortgage, on express promise of his father that the mortgages would be paid and the home property preserved for his mother; these mortgages, however, were all executed long prior to the surrender of the $6,000 note into his possession for his mother's benefit. It also appears from his evidence that his father, William Preston, had been engaged in business on a large scale, and at the time this note was turned over his indebtedness would probably reach $100,000; that he had indorsed notes with his father probably to that amount, and at that time he was turning over to his creditors by way of mortgages his entire estate, and that the surrender of this $6,000 note was in pursuance of his purpose to turn over all of his property to his creditors. He testified also that, after the foreclosure proceedings had been instituted by the First National Bank of Mauch Chunk, he consulted with an attorney with reference to intervening in that proceeding, on his mother's behalf, on account of the $6,000 note which he then held for her; that, acting on the advice of the attorney whom he consulted in her behalf, he did not intervene. He testified also that at one time the $6,000 note had been placed with Earnest Griffith, as collateral, a transaction which he says he had no personal knowledge of, but which was conducted by his brother, Alfred Preston. The plaintiff offered the deposition of her husband,

William Preston, who testified that in 1875 he gave his wife their homestead in Omaha as a wedding present and a homestead for herself and children, and afterwards he desired to borrow money to improve property of his own and procured her consent to put a mortgage upon the homestead upon his promise to pay the mortgage off; that the property was afterwards remortgaged with the consent of his wife under a similar promise on his part; that he transferred the $6,000 note to Walter G. Preston for his mother; that no assignment of the mortgage was ever made; that he divided up his property *pro rata* among his creditors in proportion to what he thought they ought to have; that he turned the $6,000 note over to his son for Mrs. Preston as a part recompense for the loss of her homestead; that the transfer of the note to Mrs. Preston was at the same time that he turned his property over to his creditors; that the homestead had never been deeded to his wife; that he had no recollection of the conversation between himself and son at the time it was turned over. Mrs. Preston, in her deposition, also testified that she did not know what the controversy involved in the suit was; that she did not know if she ever owned the mortgage in the suit or not; she left her business affairs entirely with her son. These questions and answers appear in her deposition: "Q. You were not aware ten days ago that this suit had been commenced, were you? A. No; I was not. Q. Did you ever own or claim to own any promissory note executed by George F. Orchard? A. I don't know, I don't remember. Q. Did you ever own a note executed by George F. Orchard and his wife in the sum of $6,000? A. I don't remember. Q. Did you ever have any property of your own? A. I did. Q. What was the nature of that property? A. It was my home. Q. Any other property besides that? A. Yes, sir. Q. What was the nature of that property? A. It was property that was given to me in lieu of my home after its mortgage. Q. Did you ever have this other property in your possession? A. It was mine in lieu of the home, it was given to me in lieu of the

home. Q. Where was the property situated or located? A. It was south of the city. Q. Real estate? A. Yes, sir. Q. Was it ever deeded to you? A. That was attended to by my son." This deposition was taken in the state of Washington on the 17th day of October, A. D. 1903. There was also evidence by other relatives of statements made by William Preston to the effect that the home property belonged to his wife. The evidence also discloses that, at the time of the transfer of his property by William Preston for the benefit of his creditors, certain real estate was deeded to his sons (evidently the real estate testified to by Mrs. Preston at the time her deposition was taken). There was an entire absence of any evidence of knowledge of the First National Bank of Mauch Chunk and the Blackstone National Bank that Emilie V. Preston claimed any interest in the mortgage securing the $6,000 note.

On the part of the defendants, the record of the foreclosure proceedings was put in evidence, together with the sheriff's deed and the record of the same. It was also shown that the Blackstone National Bank had conveyed its interest in the property to Morsman, Jr., trustee for the Mauch Chunk Bank; that the Blackstone National Bank had gone into voluntary liquidation and had ceased to exist; that a portion of the premises involved had been conveyed to the Fred Krug Brewing Company; that no assignment of the mortgage securing the $6,000 note had ever been filed in the office of the register of deeds. Payment of the taxes on the property was also shown, together with services performed in reference to the assessed valuation and the defense of condemnation proceedings. There was evidence that the Mauch Chunk and Blackstone National banks, and Mr. Morsman, Jr., as trustee, had never had any knowledge of any claim to the $6,000 note on the part of Emilie V. Preston.

It is contended by plaintiff in this court that the decree in the foreclosure proceedings instituted by the Mauch Chunk Bank, in so far as it fixes a personal liability upon William Preston on account of his indorsement of the two

27

$5,000 notes involved in that case, and in so far as it determines that the holders of those notes were entitled to be first paid out of the proceeds of the sale of the property, is void, because it is not based upon any allegations in the petition of the Mauch Chunk Bank and the cross-petition of the Blackstone National Bank, and because it does appear from the allegations of such petition and cross-petition that the holders of these notes did not cause them to be protested for nonpayment, and that because of such failure to protest the notes for nonpayment Preston was released from any personal liability as an indorser.

We think, however, that under the facts in this case, no protest for the nonpayment of the notes was necessary. These notes were payable directly to Preston; he pledged them to the bank as collateral security for his own debt; there were no indorsers to be charged; Preston suffered no loss by reason of the failure to protest the notes.

Mr. Story, in his work on Promissory Notes (7th ed.), sec. 284, declares the rule to be "a relaxation of the strict rule as to the necessity of a due presentment of a note by the holder to the maker for payment at its maturity, where the note has been received as collateral security for another debt due to the holder. * * * In order therefore, to entitle the debtor, as owner of the collateral security, to resist the payment of the debt, he must establish that he has sustained damages by reason of the want of due diligence and due presentment on the part of the creditor, and to the extent of such damages he may recover compensation or indemnity, or recoup the amount in any suit for the debt."

Another writer on the same subject declares that "the creditor who has effects of the principal in his hands, or under his control for the security of the debt is a trustee for all parties concerned, and if such effects are lost through the negligence or want of ordinary diligence of the creditor, the surety is discharged to the extent that he is injured, the same as if the effects had been lost by the positive act of the creditor. In such case he is bound to

be diligent in preserving such effects to the same extent that any other trustee similarly situated is bound to use diligence. The kind of diligence required will be governed by the circumstances of each particular case. If the principal places in the hands of the creditor, as collateral security for the debt, an obligation of a third person, the creditor is, without any special agreement to that effect, bound to use diligence to collect the same and to charge all the parties thereto, and if anything is lost on account of his failure to use such diligence, not only the surety but the principal also is discharged to the extent that he is injured." 1 Brandt, Suretyship and Guaranty (3d ed.), sec. 498.

The rule announced by these authors is supported by sound reasoning, and, applied to the facts in this case, leaves nothing in the contention of the plaintiff as to the failure to protest the notes involved in the original foreclosure. In that case the answers of Preston to the petition and cross-petition were evidently prepared with this rule in view. He asserted therein his title to the notes and insisted upon a decree in conformity with his demand. It was right and proper that he should do so, and the trial court in that case rightfully found that these notes were held as collateral only, and, in so far as the rights of William Preston are concerned, he was absolutely bound thereby, and, whether liable as an indorser on these notes or not, he was still held under his contract of indebtedness to the holders of the notes; and, in our opinion, the court upon the issues there presented, properly found that the Mauch Chunk Bank and the Blackstone National Bank were first entitled to be paid out of the proceeds of the sale of the mortgaged property.

A mortgagee may, by agreement, fix the rights of the holders by assignment of the notes secured by the mortgage to the mortgage security, and such an agreement may be implied from the circumstances of the transfer. *Noyes v. White,* 9 Kan. 640; *Grattan v. Wiggins,* 23 Cal. 16. From the assignment of the notes to the banks by Preston as

collateral to his own indebtedness, it may fairly be presumed in equity, in the absence of facts showing a contrary purpose, that it was the intention of the parties that, out of the security for the payment of the notes the banks should first realize the amount of the collateral held by them, not exceeding Preston's indebtedness to the banks; and, in addition to the reason given by the trial court in the original foreclosure for the decree fixing the status of the notes, the decree was right upon the ground that such course was contemplated by the parties. Equity does not seek circuitous routes. It would have been idle to have permitted Preston to have participated *pro rata* in the proceeds of the sale of the security, and then require him to pay the money back to the banks in satisfaction of his indebtedness to them. The transfer of the $6,000 note to Mrs. Preston subsequently to the transactions with the banks would not affect their security. *Noyes v. White, supra.* But there are other considerations which aid us in a determination of the case. The right of William Preston, as to the $6,000 note held by him after the transfer to the banks, to participate in the proceeds of the sale of the mortgaged property in the original foreclosure was, as we have determined, to receive such proceeds after the payment of the costs, and the amount found due the plaintiff therein and the defendant, the Blackstone National Bank.

Mrs. Preston claims to have acquired the $6,000 note in January, 1896. At that time, by reason of the failure of the maker to pay the interest which had matured thereon in June and December, 1895, the note, according to the express stipulation of the mortgage, was past due for the purpose of the foreclosure which the plaintiff now invokes, and for that purpose was dishonored. She took, therefore, by the delivery of the note, a chose in action. She acquired the rights of William Preston, and no more.

Furthermore, the good faith of the transaction may well be questioned. We are far from convinced that the name of the wife is not being used for the purpose of enabling Preston to evade his obligations. Walter G. Pres-

ton, attorney in fact for the plaintiff, was a party to the original foreclosure, and according to his own testimony, consulted an attorney with reference to an intervention on behalf of his principal, while the foreclosure was pending. He knew that the plaintiff in that proceeding, and the defendant, the Blackstone National Bank, claimed a preference as against the holder of the $6,000 note. The course pursued by him was by virtue of authority from his principal, and she cannot now be heard to say that she was not bound by it. She permitted the foreclosure to proceed to final decree; permitted the interested parties to purchase the property upon the decree of the court that they were entitled to be first paid out of the proceeds of the sale; permitted the title to pass to the purchaser and the deed to be recorded without notice of her claim; permitted one of the parties to purchase, in good faith, the interest of another; permitted a sale of a portion of the property to another third party, and she should now rest in the position that she has voluntarily placed herself.

The judgment of the district court was right, and we recommend that it be affirmed.

DUFFIE, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.