NEW YORK SECURITY & TRUST CO. v. LOMBARD INV. CO. et al.
(FERREE, Intervener).

(Circuit Court, W. D. Missouri, W. D.   January 21, 1895.)

1. MORTGAGE—NOTES MATURING AT DIFFERENT TIMES—PRIORITY—FOLLOWING STATE LAW.

The law of Missouri that where notes of the same date, but maturing at different times, are secured by mortgage on land, the note first maturing is entitled to priority in the security, though it is not resorted to till all the notes are due, and though the first note has been transferred without assignment of the mortgage, will be followed in a federal court as a rule of property, where the land is in that state, and the parties to the mortgage resided there at the time of its execution.

2. SAME—ASSIGNMENT OF NOTE.

L., an investment company, took from D. two debenture bonds of even date, maturing at different times, secured by trust deed on Missouri land, and assigned them with the trust deed to B., and also guarantied payment of interest at maturity and of the principal at maturity, if it was then paid by the maker; if not, then two years after maturity. Though neither the interest nor bonds were paid by the maker, L. paid the interest and first bond at maturity, from its own funds, nothing being said as to whether the money came from the maker, and B. not knowing that it

did. not. B., however, indorsed the bond, "Pay to the order of ——, without recourse," and delivered it to L. Thereafter L. substituted it for other security held by a trustee for the benefit of purchasers of debentures from L. Before the end of the two years after the maturity of the first bond, when, under the guaranty, L. was bound to pay the bond, it became insolvent. *Held*, that the transaction between B. and L. as to the first bond was not a satisfaction of the debt, but, what it appeared on its face, an assignment of the bond, carrying with it priority in the security of the trust deed, at least so far as those were concerned for whose benefit it was placed with the trustee in substitution for other security.

3. NOTICE—TO OFFICERS OF CORPORATION.
Where the same persons are officers of a corporation and trustees for the benefit of its creditors, notice to them as such officers is not notice to them as trustees.

Suit by the New York Security & Trust Company against the Lombard Investment Company and others. Heard on the petition in intervention of Leslie C. Ferree.

This cause is submitted upon an agreed statement of facts, the substance of which is about as follows: The Lombard Investment Company, at its office in Kansas City, Mo., took from one Donaldson two debenture bonds, of date February 1, 1889, payable to David H. Ettien, as trustee,—one for the sum of $2,000, and the other for $9,000; the $2,000 bond running three years, and the $9,000 bond running five years,—with interest coupons attached, payable semiannually, secured by a deed of trust on real estate situated in Kansas City, Mo. These bonds the Lombard Investment Company transferred by indorsement on the 4th day of February, 1889, to Daniel Bushnell, of Pittsburgh, Pa., with a guaranty of payment of the coupons at their maturity, and also to collect at its expense, and pay over, the principal, at maturity, provided the same was paid by the maker, and, in default of payment by the maker, to collect and pay over within two years from the maturity of the principal sum. Accompanying this transfer, the company also assigned the deed of trust to said Bushnell. On the 1st day of May, 1889, the said company made an indenture agreement with Benjamin Lombard, Jr., James L. Lombard, and H. W. L. Russell, as trustees, which set out that the said company, desiring to issue and sell its debentures, "secured by pledge of real-estate mortgages and other evidence of indebtedness, secured by real estate," the said trustees were designated to hold the collateral securities of said company, "to be held by the said trustees in trust for the benefit of the purchasers of said debentures." This indenture contained the following provisions: "Whereupon said trustees shall indorse their certificate of such fact upon debentures, not exceeding $1,000 for every $1,050 of securities so transferred to them. Each series of debentures shall be wholly independent of any other series in the matter of securities, and said trustees shall not certify or countersign any debentures for which they do not hold at least five per cent. of securities of real estate in excess of the bonds so countersigned. It is understood and agreed that, when securities or real estate shall be placed in the hands of the trustees under this trust as collateral for debentures, the company may have the right to withdraw such securities or real estate, and substitute in its stead other securities or real estate which, in the opinion of the company, have equal value. It is agreed that, whenever the said Lombard Investment Company shall produce and surrender any of the debentures which have been countersigned by said trustees, the said trustees, when requested by the company so to do, shall redeliver a pro rata share of the securities pledged for the payment of said series, whereupon the debentures so surrendered shall be canceled." Neither the interest coupons nor the principal of said bonds were paid by the mortgagor; but, as the coupons matured, they were paid by the Lombard Investment Company, out of its funds, at its branch office in the city of Philadelphia, although, by the terms of the bond, the principal and interest were made payable at its office in Kansas City, Mo. At the maturity of the first bond for $2,000, the Lombard Investment Company likewise paid the principal sum to the executor

of the estate of said Bushnell, he having in the meantime died. Nothing was said by either party, at the time of these payments, as to whether or not the money came from the mortgagor,—nor did Bushnell nor the executor know that the moneys so paid were advanced by the Lombard Investment Company; but, at the time of the payment of said first-named bond of $2,000, the executor made the following indorsement thereon: "Pay to the order of ———, without recourse. Joseph Bushnell, Executor of the Estate of Daniel Bushnell, Deceased,"—and delivered the said bond to said company. Thereafter the said company, pursuant to the provisions of the said arrangement with said trustees, presented the same to said trustees, and substituted it for a corresponding amount in value of other securities held by the said trustees. What particular security of like value the company thus withdrew from the custody of the trustees is not known. This $2,000 note has ever since remained with the trustees, as aforesaid. At the time of the transactions aforesaid, the said trustees were directors and managing officers of the Lombard Investment Company. In June, 1892, said Russell resigned as trustee, and A. D. Rider was appointed his successor, and acted until September 15, 1893, when he resigned, and Sanford B. Ladd was appointed his successor. On the day last aforesaid, said Benjamin Lombard, Jr., also resigned as trustee, and Frank Hagerman was appointed his successor, and said James L. Lombard continued to act as such trustee. Neither said Hagerman and Ladd nor any of the debenture holders had any knowledge of the facts of the manner of the payment of said $2,000 bond and coupons to the assignee thereof, or the manner of placing said bond with said trustees as aforesaid, until after the appointment of receivers for said investment company, which appointment was made on the 18th day of September, 1893. The said Lombard Investment Company also paid out of its own money the interest coupons on the $9,000 note, which has ever since the transfer remained the property of said Bushnell and his estate; the interest on said $9,000 note being paid to August, 1893. The said company and the maker of said notes are wholly insolvent, and the property covered by the deed of trust is now worth not exceeding the sum of $9,750. The said executor of Bushnell has paid out for insurance and taxes on said property, according to the provisions of the deed of trust, various sums of money stated in the agreed statement of facts. The intervener, Leslie C. Ferree, has qualified as administrator of Daniel Bushnell in the probate court of Jackson county, Mo., as ancillary to the executorship in the state of Pennsylvania. The last note, of $9,000, and interest thereon since August, 1893, remaining past due and unpaid, the said administrator, Ferree, presents his petition to this court, setting out in substance the facts aforesaid, and asks this court for a determination in advance of a foreclosure sale under said deed of trust as to the respective priorities of the said receivers and the said estate in the proceeds to arise under such foreclosure sale.

O. A. Lucas, for intervener.

Frank Hagerman and S. B. Ladd, for defendant Lombard Investment Co.

PHILIPS, District Judge (after stating the facts). As there are a number of cases of like character with this, growing out of several transactions of the Lombard Investment Company, which this court will be called upon to determine, I have given to the questions of law arising on the agreed statement of facts herein much consideration.

It has been since 1865 the settled law of this state (where the mortgaged property is situated, and the parties thereto at the time of its execution resided) that where several notes of equal date, but maturing at different times, are secured by deed of trust on real property, in a foreclosure proceeding the notes are payable out of the proceeds of the sale in the order of their maturity, and the mere failure or neglect on the part of the holder of the first note to pursue

his remedy on default of payment until all the notes become due does not affect his right of priority in the proceeds, where he has done no act to work an estoppel in favor of the junior notes. Mitchell v. Ladew, 36 Mo. 527–534. In that case there were three notes. The mortgagor, Ladew, paid off the first note. Anderson, the payee, transferred by indorsement the second and third notes, which passed by successive indorsements into the hands of the plaintiff. After the second note went to protest, Anderson, being bound as indorser, paid plaintiff the amount due thereon, and took it up, and then transferred the same for value to George Knapp. There was no formal assignment of the mortgage. But the court asserted, what is now the generally recognized rule, that the assignment of the note carried with it the mortgage, as the mere incident of the note, as effectually as if there had been a formal assignment of the trust instrument. So the courts hold that the mere transfer of the mortgage without the debt is a nullity. Thayer v. Campbell, 9 Mo. 280; Pickett v. Jones, 63 Mo. 195; Carpenter v. Longan, 16 Wall. 271. Although Anderson, in the case first cited, the original payee and mortgagee, had, as indorser, taken up the second note, it was held in the controversy between Knapp, to whom Anderson transferred it, and the holder of the third note, that, the mortgaged property not being sufficient to satisfy both notes, Knapp's note should first be satisfied out of the proceeds. This rule has been reaffirmed in the following cases: Thompson v. Field, 38 Mo. 320; Hurck v. Erskine, Id. 484; Freeman v. Elliott, 48 Mo. App. 74,—where it is so held and applied, although the three notes secured by the trust deeds, maturing at different times, were originally made to different payees. See, also, Manufacturing Co. v. Roeder, 44 Mo. App. 324; 2 Jones, Mortg. pars. 1699, 1700, note 1, and 1701. This being the settled law of the state in respect of the construction and application of mortgages on property situated here, I understand that a like construction and operation will be given thereto by the federal courts, sitting within the state, because the matter is not one of general commercial law, but pertains to the transfer of property; and therefore such rule of construction becomes, in effect, a rule of property. See Union Bank v. Kansas City Bank, 136 U. S. 223, 10 Sup. Ct. 1013; Etheridge v. Sperry, 139 U. S. 276, 277, 11 Sup. Ct. 565; Randolph's Ex'r v. Quidnick Co., 135 U. S. 457, 10 Sup. Ct. 655.

Intervener invokes the rule, which obtains in some jurisdictions, that, where the holder of a mortgage securing more than one note assigns one of the notes and the mortgage with it, it would be inequitable for him, after receiving the money on the note so assigned, to come into competition with his assignee, if the mortgage property should prove insufficient to satisfy the claims of both. The case of Noyes v. White, 9 Kan. 640, is chiefly relied on. All this case, outside of persuasive discussion, decides, is that where the mortgagee holds two notes, and assigns the one last maturing, together with the mortgage, it implies a contract of election on the part of the assignor that the note retained by him shall be postponed in favor of the assignee of the transferred note. This rule springs from good

faith in equity, as asserted by good authorities. In Mitchell v. La-dew, supra, the case of Gwathmeys v. Ragland, 1 Rand. (Va.) 466, is cited with approval as a leading case. In that case the deed of trust was executed by A. and wife, to secure the payment of three notes to B. The first note was paid. The second note was transferred by indorsement to Ragland, without any assignment of the deed of trust. The third note was indorsed to Gwathmeys, who took an assignment of the trust deed. The trustee having advertised the land for sale under the trust deed to satisfy Ragland's claim, Gwathmeys interposed by bill in equity to enjoin the sale to satisfy Ragland's claim. The contention was that, as Gwathmeys had taken an assignment of the deed of trust, he was entitled to a preference out of the trust property. The court of appeals affirmed the judgment dissolving the injunction, and held that the deed of trust operated as a security for the payment of the notes in the order in which they fell due.

The case under consideration is to be restrained to its own peculiar facts. Both of the debenture bonds secured by the trust deed were assigned to intervener's intestate. The formal assignment of the deed of trust invested the assignee with no greater security or right than he would have possessed by the mere assignment of the bonds. Being possessed of the bonds and the security, had he again assigned and transferred the note first maturing to a third purchaser for value, without more, no question could be made that the benefits of the mortgage security would have passed as an incident to his indorsee, who, according to the Missouri rule, would be entitled to have his bond first satisfied out of the proceeds of the security. The debenture bond conveyed on its face notice to the purchaser that the bond belonged to a certain series of bonds, and that, to further secure them, there was placed in the hands of designated trustees collaterals held by them, "as a guaranty fund for the payment of these bonds, and are subject to the inspection of the holders of the same at all reasonable times." Indorsed on the bond was expressed the extent and limitation of the guaranty made by the Lombard Investment Company, as the assignor, to guaranty—First, the payment of the coupons attached at the maturity thereof; second, "to collect at its own expense, and to pay over, the principal hereof at maturity, provided the same is paid by the maker; third, "in the event of default being made by the maker, to collect at its own expense, and to pay over, the principal hereof within two years from the maturity of the same, and to pay interest thereon at the rate of six per cent. per annum, payable semiannually, until the principal is paid." In paying off the coupons as they matured, the Lombard Investment Company was but discharging the obligation of its guaranty. But, as to the principal of the bond, no liability thereon attached to the company to pay until two years after its maturity. So that, as between the holder of the bond and the guarantor, the first question is, did the transaction, on its face, in the absence of any statement or declaration by either party, or any common understanding between them, amount, in contemplation of law, to a satisfaction of the debt?

In the consideration of this question, it seems to me it ought to be divested of all assumption of any special equity in favor of the intervener. If the company had taken the two years' time accorded it by the contract of guaranty in which to pay, when the intervener came to enforce his claim, in 1894, he would have found the guarantor insolvent, and he would have had to look to the mortgaged property for the payment of the two notes, with recourse only over against the insolvent estate. So that, should the $2,000 be enforced against the security, the status of intervener would be precisely as if the guarantor had not paid. With respect of the $2,000 bond, intervener had the right and power to protect himself as the holder of the mortgage, so as to reserve to himself the sole benefit of the security for the payment, first, of the remaining bond of $9,000. This he failed to do by any express act. What is the implication, in the eye of the law, from what he did do? He simply indorsed the bond in blank, without recourse, payable to order, and so left it with the Lombard Investment Company. This, prima facie, negatived an intent to treat the transaction as a payment and satisfaction of the debt. The indorsement in blank of a negotiable note, as this was, invests title in the holder; and, although without recourse, it implies that, while the indorser declines to assume any responsibility, yet, "by the very act of transferring it, he engages that it is what it purports to be,—the conveyed obligation of those whose names are upon it. He is like a drawer who draws without recourse, but who is, nevertheless, liable if he draws upon a fictitious party or one without funds." 1 Daniel, Neg. Inst. par. 670. As said in Dodge v. Trust Co., 93 U. S. 383:

"Such parties may either pay in satisfaction of the note, or pay and hold it as by a transfer, leaving it an existing security. It can therefore make no difference to the holder whether, when taken by a stranger, it is taken and held as upon a transfer, or in satisfaction of the instrument. The negotiability of a bill or note remains after maturity, as before, subject to the equities between the parties."

Such being the legal intendment of the indorsement made by intervener, it is questionable whether it would have been competent for him to undertake by parol testimony to give to the written indorsement any other effect. State v. Hoshaw, 98 Mo. 358–361, 11 S. W. 759. In the case of Champion v. Investment Co., 45 Kan. 103, 25 Pac. 590, it was held that where the investment company took and negotiated through A., acting for and on its own behalf, mortgaged securities, and, on the maturity of the first interest coupon, advanced the money therefor out of its own funds, and the holder thereupon delivered up to the company, uncanceled, the coupon, the investment company was entitled to participate pro rata in the proceeds of the mortgage property with the holder of the principal bond and remaining coupons. In that case, however, stress is laid by the court upon the fact that the payee of the coupon had notice of the fact that it was the custom of the investment company to pay the coupons at their maturity, without having collected from the obligor. Nor was there in that case, as here, any guaranty on the part of the company to see that payment was made on the coupons at maturity.

But the court does assert the principle that "the transfer of the coupon from the plaintiff to the investment company was presumptively a transfer of title." What difference in principle can be distinguished against the cestuis que trustent of the receivers in this case, where the Lombard Investment Company, out of its own money, paid to intervener the amount of the principal debt two years before its obligation to pay attached, and without any inquiry on the payee's part as to whether or not the mortgagor had paid it? At the time of the payment to the Lombard Investment Company, the relation of creditor and debtor did not exist between it and intervener. And, if he saw fit to accept the money without inquiry whether the same had been paid by the debtor, but, on the contrary, indorsed over in blank and delivered the bond to the company, it does seem to me that he should be held to have intended the broad effect which the law affixes to his indorsement.

It may be, as suggested by counsel for intervener, that if the transaction is to be viewed as not equivalent to a satisfaction of the $2,000 bond, and that the Lombard Investment Company could be entitled to participate in the mortgage security, a court of equity would not go through the idle ceremony of so decreeing, when the intervener would be entitled to judgment over against the company as guarantor for the debt, the company being insolvent. In reply to which, receivers, representing the estate and all of its creditors, contend that by reason of the transfer by indorsement, payable to order in blank, the intervener put it in the power of the company to again transfer by delivery the bond to any other purchaser, or to employ it as collateral security in any other like series of debenture bonds, and that it was so employed, and therefore other and new rights have supervened. As already stated, the indorser without recourse of a past-due note impliedly warrants that the note is genuine, and that it is what it purports to be on its face,—a living debt. Bank v. Smiley, 27 Me. 227; Challiss v. McCrum, 22 Kan. 157. Daniel, in his work on Negotiable Instruments (volume 1, par. 700), approves the following statement of the rule made in Lomax v. Picot, 2 Rand. (Va.) 260:

"An indorsement without recourse is not out of the due course of trade. The security continues negotiable, notwithstanding such an indorsement, nor does such an indorsement indicate in any case that the parties to it are conscious of any defect in the security, or that the indorsee does not take on the credit of the other party or parties to the note. On the contrary, he takes it solely on their credit; and the indorser only shows thereby that he is unwilling to make himself responsible for the payment."

Pursuant to the terms of the agreement between the Lombard Investment Company and the trustees for the debenture holders, securing the right to the company to withdraw any collateral security by substituting in its stead other security which, in its opinion, is of equal value, after the transfer by intervener by indorsement, the company delivered the same to said trustees, in lieu of an equal amount of collaterals then surrendered by the trustees to the company. Thereby the trustees became the holders of said $2,000 bond for the benefit and use of the debenture holders of that series,

whereby such debenture holders acquired an interest in this apparent security. The bond held by intervener recited on its face that any security held by said trustees was subject to the right of visitation and examination at all reasonable times; so that, had any such debenture holder interested in the given series, at any time after the substitution of the $2,000 bond, gone to the trustees, he would have found this bond among the collaterals as security for his bond, with no evidence on its face that it was dead.

But, say counsel for intervener, at the time of the transaction aforesaid, the trustees were officers of the Lombard Investment Company, and, as such officers, they are to be presumed to have had notice of the manner in which the company reacquired possession of the bond in question, and that the knowledge so obtained by them as officers of the company affects them as trustees. I do not so understand the law. The office of director or other officer of a corporation, and that of the trusteeship, were entirely separate and distinct. The knowledge or notice such trustees may have acquired in the performance of their duties would not be imputable to the corporation. Johnston v. Shortridge, 93 Mo. 227–232, 6 S. W. 64, and citations. The converse of this proposition must logically be true,—that the information acquired by the corporation officers while acting for it cannot be imputed to the trustees, so as to bind the beneficiaries of the trust. Furthermore, all the knowledge the officers of the investment company had was that the money had not been paid by the mortgagor, but the same in fact was advanced by the Lombard Investment Company; and we have already maintained that the manner of the transfer of the bond by intervener precludes the inference that he himself regarded the bond as satisfied.

Whatever else may be said or held respecting the rights and equities of intervener against the Lombard Investment Company, as against the holders of the debenture bonds of the series in which the said $2,000 bond was substituted with the trustees, it does seem to me that the facts present an apt instance for the application of the equitable rule that, where one of two innocent persons must suffer a loss consequent upon the wrongful act of a third person, the loss must fall on him who put it in the power of the third person to do the wrong. International Bank v. German Bank, 71 Mo. 183. The elaborate discussion of this just rule by so distinguished a jurist as Judge Napton, in the case last cited, leaves nothing to add in its application to the case in hand. It concludes, in my humble opinion, the right of intervener to be declared a prior lienor as to the bond held by him. A decretal order will be entered, on the agreed statement of facts, in conformity with this opinion, allowing to intervener a preference as to taxes paid by him on the property, and also as to insurance paid by intervener.