CENTRAL STATE BANK, Trustee, Appellant, v. COMMERCIAL BUILDING & SECURITIES COMPANY et al., Appellees; JAMES W. HUBBELL et al., Appellants.

April 3, 1928.

Rehearing Denied June 26, 1928.

*Parrish, Cohen, Guthrie, Watters & Halloran,* for Central State Bank, appellant.

*Howe & Howe,* for Bondholders' Committee, appellant.

*Howard L. Bump,* for J. E. McPherson, Grace Goodwin, and Goodwin Tile & Brick Company, appellees.

Albert, J.—The Commercial Building & Securities Company was a corporation organized under the laws of the state of Iowa. From time to time, it issued bonds in series, designated by letter from A to H, inclusive, in the aggregate sum of $673,000, which, at the time in question, were reduced to $488,000. A trust indenture was executed on July 21, 1920, in which Grant McPherrin and Ralph Plumb were named trustees. They were later succeeded as such trustees by the plaintiff herein, the Central State Bank. In this indenture they first declared the exercise of their corporate powers to issue and sell bonds of indenture, to be secured by a pledge of various evidence of indebtedness owned by the company, and among other things they declare:

"For the purpose of securing payment of principal and interest upon such bonds or debentures as might be hereafter issued, the company does make, constitute and appoint said

Grant McPherrin and Ralph H. Plumb trustees for the purposes hereinafter expressed.''

They declare for the issuance of bonds in series: ''Each series shall be wholly independent of any other series in the matter of securities.'' The character of securities to be placed in the hands of the trustees is then designated, and relative values of such securities are specified. They declare further that the company is to collect and receive the payment of the principal and interest as they become due from the various forms of security pledged with said trustees, and shall pay to said trustees monthly an amount sufficient to meet the payments of the principal and interest upon such bonds as may from time to time mature. If the amount collected by the company exceeds that required to meet the matured payment of the principal and interest, the company has the option to retain such payments, and in lieu thereof deposit with the trustees approved securities of equal or greater value. If the monthly income from these securities is not sufficient to pay the matured principal and interest, the company shall have advanced to the trustees an amount sufficient to meet such payments, and thereupon the company is entitled to receive from a trustee an amount of collateral in their hands equal to the amount of the principal and interest so advanced. The company has the right to surrender to the trustee the bonds not yet matured, but duly canceled by the company, in return for which the trustee is to surrender such an amount of securities as will equal the face value of said canceled bonds. Equally, the company may turn in matured bonds and interest coupons paid and canceled by the company, and the trustee shall then pay to the company the face value thereof. If the company fails to pay to the trustee, within 60 days after due, the sum due upon the collateral, the company must replace such collateral, or pay cash to the trustee and receive the collateral therefor. It may also withdraw or surrender bonds unsold, to an amount equal to the defaulted payments. If any of the securities pledged are not worth their face value, notice shall be given to the company to make good the deficit, and in case it fails to do so, the trustees may collect and receive payment of principal and interest due upon said securities. In case the company fails to pay to the trustees sufficient to meet the matured principal and interest, their right to collect the

principal and interest on the trust securities ends. If the company is in default after notice, the trustees may declare the whole of said bonds and interest thereon due and payable, and may at once proceed to sell the securities in their hands and apply the same on the payment of said bonds; or they may collect and hold said securities, collect future payments of principal and interest thereon, and apply the proceeds to the payment of the maturing principal and interest on said bonds until all are paid. In event that the collateral does not produce sufficent to pay said bonds and interest, the company shall pay said trustee the amount of such deficiency. The company agrees to be liable for the payment of said bonds in the event that the collateral security deposited by the trustees shall be, for any reason, insufficient to fully pay the same.

Each of the series of bonds from A to H, inclusive, referred to herein, was issued under this indenture trust. The bonds were in the usual form of a promissory note, contained reference to the aforesaid indenture of trust, and recite that it is "secured by the deposit of collateral securities with the Central State Bank, trustee, as provided in a certain indenture of trust." It further gives the company an option to redeem the obligation at the maturity of any coupon attached to the bond. It further provides that, if default should be made in payment of any interest, and continue for 60 days, then, at the election of the legal holder, the bond becomes due and collectible. The interest on all of these bonds was due and payable semiannually. The bonds in each series bore different maturity dates, the latest which is called to our attention being March 1, 1934. In certain of the bonds the date of maturity was September 1, 1925. Prior to this time, the company had defaulted in its payment to the trustees, and the trustees had served notice of their election to declare all of the bonds in all of the series due on September 1, 1925. The trustees then proceeded in regular order to foreclose their indenture of trust, a decree was entered accordingly, and the trustees were ordered to liquidate or collect all of the collateral security then held under the indenture of trust. This the trustees did, and had in their hands on February 1, 1927, a sum total of $59,357.22, belonging to the various series in different amounts. The trustee then became dubious as to the method of distribution, and made application to the court for a con-

struction and interpretation of its trust indenture, and asked for an order as to the manner and method of distribution of the funds then in its hands. Certain of the bondholders intervened, and, on hearing, the court decided that the trustee should pay out of the proceeds of the collateral deposited with the trustee the bonds in each series, with interest in accordance with their maturity dates named in said bonds; and that, in the event that there were not sufficient funds to pay all the bonds coming due at a given date, the amount for distribution should then be distributed equally, first computing the interest among the bondholders having bonds falling due on such date. In short, the holding of the court is that priorities are to be determined by the maturity date shown on the bond, and those first due shall be first paid.

It is conceded that there is not sufficient collateral security in the hands of the trustee in any one of these series to pay the same in full. We are not quite clear as to just the meaning of the court's decree in this matter, but we are clear on this proposition: that each series had behind it, as security, certain collateral that belonged to that series alone, and such collateral should be applied, so far as it will go, to the payment of that series, and to no other. We are equally clear that, as between the different series of bonds, there are no priorities. The record does not show the exact date, but the company became insolvent, and was in the hands of a receiver at or before September 1, 1925. As stated, in each series of the bonds issued herein, the maturity dates vary. Certain of the interveners here had bonds that became due on September 1, 1925. They insist that their bonds, with interest, shall be paid in full before the trustee can pay anything on the other bonds, which, according to their face, mature later. It is insisted, on the other hand, that the funds in the hands of the trustee belonging to any particular series of bonds shall be distributed *pro rata* among the bondholders in that series. This is a simple statement, but the question is not easy of solution.

It is insisted that the rule we have applied to real estate mortgages in a series of cases commencing with *Grapengether v. Fejervary*, 9 Iowa 163, and ending with *National Bank of Battle Creek v. Dean*, 86 Iowa 656, should be applied to the situation before us. We have established the rule in this state

that, where a real estate mortgage is given to secure several notes maturing at different dates, and the notes are sold to other parties, and, on foreclosure, the proceeds are not sufficient to pay all of the notes, with interest, then the distribution shall be made according to the maturity dates of the different notes. In other words, this establishes what is known as the "pro-tanto" rule. In the case of *Whitney v. Eichner*, 204 Iowa 1178, we held that, where the maturity dates of all of the notes secured by the mortgage were on the same day, the pro-rata rule applied.

It is urged in the case at bar that the rule laid down in the *Whitney* case should govern, because, under the indenture in this case, the right was reserved to the trustee, under certain conditions, to declare all bonds due, and this right was exercised and all bonds were declared to be due on September 1, 1925. We have, however, settled this question in the case of *Leavitt & Johnson v. Reynolds*, 79 Iowa 348, where we held that the acceleration clause in the mortgage. making all notes due, regardless of their maturity date, for a failure to pay interest, taxes, etc., will not change the maturity date of the notes in such a sense as to expunge from the contract the agreement implied by law that the notes shall have priority in the order of their maturity.

The question is, have the above pronouncements of this court any controlling force or effect in the case at bar?

To a fair determination of this question it may be well to find just what the status of all these parties to this transaction is, and we will deal with one series of bonds as typical of all. The company determined to sell certain bonds or debentures. To accomplish this purpose, by their indenture of trust they created a trustee, in whose hands they placed certain securities, which were to be held by it for the purpose of paying the bonds thus issued, together with the interest thereon. This plan was carried out, the collateral placed in the hands of the trustee, and the bonds sold. This transaction was not a mortgage, nor can it be construed to be in effect a mortgage, nor a deed of trust (if such instrument could apply to personal property), for the reason that, to make either a mortgage or a deed of trust, the first requisite is a defeasible conveyance of the title. This indenture does not purport to convey the title to this property. It also lacks several other elements necessary to a mortgage or a

deed of trust. The facts are that, under this indenture, the trustee simply held the possession of this collateral, and was to receive from the company and pay over to the bondholders interest and principal as it matured; or, in event that the company did not furnish funds necessary therefor, the trustee could collect the principal and interest on the collateral and hold and apply it for that purpose. It in no way bears the earmarks, therefore, of either a mortgage or a deed of trust. It is, in the eyes of the law, nothing more or less than a pledge. That is to say, the company placed this collateral in the hands of the trustee as a pledge, and as security for the benefit of the respective bondholders.

In 1 Jones on Corporate Bonds & Mortgages, Section 32, it is said:

"Debentures, strictly so called, differ from mortgages in not conferring upon the grantees the legal title, or any of the ordinary rights of ownership of the property upon which a charge is created. They are, at most, only equitable mortgages. The charge they create upon the property of the company confers only equitable rights, either as against other creditors or as against the corporation; and in fact the true test whether an instrument is a debenture or mortgage is found in the inquiry whether the holder has any legal right to interfere with the company's use or control of the property in whatever way it pleases. If the instrument confers a charge which can be protected and enforced only in equity, it is strictly a debenture."

Is there a similarity between the position of a bondholder in this proceeding and the holder of one of the promissory notes secured by a mortgage on real estate?

One who buys one of a series of notes secured by a real estate mortgage is in this position: He has a promissory note, for the security of which there is an outstanding mortgage on a definitely described tract of real estate. If he is to receive payment of this note, it must be realized from the land itself, as there is no other security to which he can look for the payment of the note.

What is the position of a holder of one of the bonds in the case at bar? There is no real estate involved as security herein, as the transaction deals wholly with personal property. We do

not hold that this necessarily makes a difference. The bond which he receives on its face guarantees to him that there have been placed in the hands of a certain trustee securities which are pledged to the payment of this particular note, as well as the other notes in the series; and reference is made therein to the trust indenture, of the date of July 21, 1920. When he looks to this trust indenture, to see just what his securities are, he discovers that the securities at all times held by the trustees are to be at least equal to the amount due on outstanding bonds. He also finds that, if at any time the securities in the hands of the trustee are not adequate, or have depreciated in value, it is made the duty of the trustee to call upon the company to replace or make up the deficiency in the securities held by such trustee. Under this situation, each bondholder must conclude that he stands on a par with every other bondholder in his series, and that his bond, as well as every other bond in that series, will be paid in full.

It has been suggested in argument that the bondholder whose bond first matures will be paid in full if all of the security in the hands of the trustee is sufficient therefor, and that the second bondholder might be paid in full, and so on down the line, following the maturity dates of the interest; and that, under the practical working of this system, if there were no acceleration of the due dates, the man with the last bond would stand to suffer, in event that the collateral security was not sufficient to pay all. Had there been no insolvency proceedings here, and no acceleration of the due dates of these various bonds, the last bondholder under the trust agreement would have sufficient funds or securities in the hands of the trustee to meet the obligation.

It is our conclusion that the intent and purpose of this system of financing was to put all of the bondholders on a parity, and there can be no question in our minds that each of the bondholders believed and understood that his rights were equal in the security in the hands of the trustee, and we so conclude. Under the application of the well-known equitable doctrine that "equality is equity," we hold, under the terms of the trust indenture and the intention of the parties, that all of the bondholders are equally interested in the proceeds of the securities in the hands of the trustee, and that it should be divided

among them *pro rata*. The situation of these bondholders, to our minds, is not the same as the situation of one who purchases one of a series of notes secured by a real estate mortgage, and, therefore, the rule governing such real estate mortgage securities should not be applied to the case at bar.

We have been unable by individual search to find any case reported that aids in the solution of this question, and counsel on each side have evidently searched with as little success as we, except that we are cited to the case of *New York Sec. & Tr. Co. v. Lombard Inv. Co.*, 65 Fed. 271, where the circuit court of Missouri held, under the Missouri law, and under the peculiar facts of that case, which bear some similarity to the facts in the case before us, that the rule adopted by the state of Missouri (similar to the Iowa rule), that, among the holders of a series of notes secured by real estate mortgages, the pro-tanto rule applies, would also apply to debenture bonds secured by a trust deed of real estate. But the facts in that case are somewhat at variance with the facts in the case before us, and, if that case is to be construed as parallel to the case at bar, we would not be disposed to follow it, because such holding, to our minds, would not do equity between the parties in the case at bar.

It is our conclusion that it was the understanding of all of the parties to this transaction that the securities put up in the hands of this trustee should stand equally for all bondholders, and, if the proceeds realized from the collateral in the hands of the trustee are not sufficient to pay all of the bondholders, then such proceeds should be shared by the bondholders *pro rata*. The district court held that the pro-tanto rule applied in this case, and in so holding we think it erred.—*Reversed.*

STEVENS, C. J., and DE GRAFF, MORLING, KINDIG, and WAGNER, JJ., concur.