SHAW, MCDERMOTT & SPARKS, INC., Appellant, v. TOWN OF DANBURY et al., Appellees; BELLE COULTER PURDY et al., Cross-petitioners, Appellees.

No. 44941.

NOVEMBER 14, 1939.

REHEARING DENIED MARCH 16, 1940.

Wm. L. Hassett and James C. Shaw, for appellant.

C. R. S. Anderson and Milchrist & Marshall, for appellees.

Clark, Byers & Garber and Howard J. Clark, for cross-petitioners, appellees.

RICHARDS, J.—Appellee town of Danbury issued 70 serially

numbered street improvement bonds in anticipation of the deferred payment of a single levy of special assessments. The bonds bore date January 1, 1929, and each was in the amount of $1,000. Bonds numbered 1 to 7 inclusive each contained the town's express promise to pay same on May 1, 1929. In like terms seven certain bonds were payable on May 1 of each of the years 1930 to 1938 inclusive. Those of the bonds that by their terms were payable on dates prior to and including May 1, 1935, numbered 1 to 49 inclusive have been paid in full. Bonds numbered 50 to 70 inclusive are unpaid excepting the interest accrued to May 1, 1936. The parties stipulated that the condition of the outstanding and unpaid special assessments pledged to the payment of this bond issue "is such that the monies hereafter collected thereon will be insufficient to discharge all the outstanding bonds in full." Plaintiff is owner of bonds numbered 50 to 54 inclusive, containing the town's promise to pay them on May 1, 1936. Cross-petitioners own bonds 69 and 70 containing a like promise to pay on May 1, 1938. Bond 61 was purchased by appellee town on January 9, 1932 with funds not derived from the special assessments. It appears that defendant appellees other than the town are the owners of the outstanding bonds the title to which has not been shown above. The question before us is whether plaintiff is entitled to full payment of his bonds numbered 50 to 54 inclusive from the special assessment fund, or whether as claimed by cross-petitioners the holder of each of the outstanding bonds, 50 to 70 inclusive, is at this time entitled to a pro rata share of such fund, a portion of which is on hand, the balance being yet uncollected from the outstanding special assessments. From the decree sustaining cross-petitioners' contention plaintiff has appealed.

The $70,000 of bonds were payable, not as the town's general obligations, but out of funds to be derived from the special assessments pledged to the payment of same. Sections 6121, 6123, Code 1935. But the funds from that source will be insufficient to pay the bonds in full. That fact is urged by cross-petitioners as the primary reason that the holders of all outstanding bonds are now entitled to share pro rata in the funds on hand or hereafter realized from the assessments.

In chapter 311, Codes 1927 and 1935, are found pertinent enactments relative to street improvement bonds. Section 6112

provides that such bonds issued for any one levy, as in this case, shall be divided into as many series as there are installment payments of the special assessments, each of the series to be as nearly equal in amount as practicable. Section 6113 provides that each series of bonds shall mature on the first day of either April, May, or June in the years in which the installments of the special taxes come due. Section 6114 sets out a form and requires that street improvement bonds be written in the terms of the form, or substantially so. The portion of this form that is significant is this:

"The city (or town) of.......... in the state of Iowa, promises to pay as hereinafter stated, to the bearer hereof, on the....day of.........., the sum of ........dollars, with interest thereon \* \* \*."

In section 6113 is a clause that the bonds shall bear interest payable annually or semiannually, and that coupons for said interest shall be attached thereto. Section 6124 provides that, if any interest shall become due on the bonds when there is no fund from which to pay same, the council may make a temporary loan for the payment of such interest, which loan shall be repaid from the special taxes and interest pledged to secure the bonds.

As required by these statutes the issue was divided into series, ten in number. Seven designated bonds composed each series. One series was in definite terms made to mature in 1929. The second series was likewise made to mature in 1930, and another separate series in each of the subsequent years until the fixed maturity in 1938 of the last series. The city promised to pay the bonds of each series on May 1 of a designated year in the words the legislature required the bonds to be written. Section 6123 provided that these bonds did not make the town liable in any way, except for the proper application of the special taxes.

The statutes that have been reviewed establish the proposition that the making of full payment of a matured series of bonds prior to the payment of a later maturing series, is a "proper application" of the special taxes. This cross-petitioners do not controvert. What they do urge is that this manner of payment has been changed, and has ceased to be a "proper application". It is well to keep in mind what is claimed to have been the causation of this alleged changing or nullifying

of a method of making the application that these statutes made proper. Cross-petitioners say that a fact situation that arose, i. e., an insufficiency of the special taxes, was the causation. They say this cause was effective to change and did change the method of application found in these statutes. The reason for the effectiveness is said to be the maxim that ''equality is equity.'' It is urged that the maxim necessitates a holding that the application be made pro rata upon all outstanding bonds; that otherwise inequity would result.

With respect to cross-petitioners' propositions it is to be noted that the statutes limited the supporting special assessments to the amount of the cost and expenses of the improvements. Section 6018, Codes 1927 and 1935. Bonds could not be issued in an amount that exceeded the special assessments levied. Section 6122, Codes 1927 and 1935. In Bankers Life Company v. City of Emmetsburg, 224 Iowa 1287, 278 N. W. 311, it is pointed out that under these statutes a deficiency will probably be ultimately found in every instance of issuance of street improvement bonds. This defect naturally inheres in the plan and a loss by someone is to be anticipated. The statutes that make the payment of a matured series of bonds, prior to payment of a later maturing series, a proper manner of application of the special taxes allocates the loss if any to the latest maturing series as a matter of evident necessity. The legislature has made no express provision authorizing any other method of application of the special taxes. If any other method is to be countenanced authority for so doing should be found in the relevant statutes or adopted as an inference properly drawn therefrom. As we understand cross-petitioners' argument it is in effect that we should in some way infer from these statutes that the legislature intended pro rata distribution whenever the fund becomes insufficient to pay all the bonds in full, and this because ''equality is equity.'' Cross-petitioners' seeming assumption is that, though there is an absence of any language in these statutes fairly susceptible of being construed, it nevertheless lies within our province to impute to the legislature a certain specific intent, on the ground that such intent appears to us more equitable than the intent the statutes reveal. But it appears to us that it was the legislature's proper function to exercise its own discretion as to where any loss there might be should fall. We cannot say on account of what considerations, thought essential to attain-

ment of the ends sought by these statutes, the legislature deemed it necessary to accord the bonds fixed relative maturities with the consequent allocation of any loss. In the passing of these statutes the public interest and general welfare would naturally be of controlling importance. And neither we nor cross-petitioners are in position to affirm that the legislature had an intent to make the bonds payable pro rata upon the contingency that the fund become partially depleted, one reason being this—no one can say that important considerations involving the public interest did not, in the legislative mind, interdict any plan of disbursement that, according to cross-petitioners would have been more equitable. We have heretofore recognized that matters of public interest were involved. In Bechtel v. Mostrom, 214 Iowa 623, 627, 243 N. W. 361, 362, we said that any rule, other than that special assessment bonds are to be paid in the order of their maturity "would lead to confusion and uncertainty." In the cited case the court was speaking concerning bonds secured by drainage ditch special assessments. Those bonds had fixed maturities in accordance with the statutes. It is more than a mere possibility that during the first year of existence of an issue of special assessment bonds a deficiency will originate, on account of assessments paid in being necessarily held without bearing interest until such time as one or more of the bonds can be paid, such bond in the meantime drawing interest. If thereupon the bonds all became entitled to payment pro rata there would be confusion, the involvements incidental to making many partial payments on all the bonds as money comes in, and an early abandonment of the contemplated procedure of paying bonds in full upon presentation. The legislature may well have considered that any such partial payment plan, to commence upon a deficiency arising and running through many years, would be a serious obstacle to this plan for financing public improvements and contrary to the public interest and welfare. The statutes having stated the order of payment and thereby fixed the portion of the issue on which the loss if any must fall, full information thereof was to say the least available to those who purchased the bonds. We are satisfied that it is not within our province to say, under the guise of construction of these statutes, that the contemplated loss should be borne in some manner other than that which many considerations may have led the legislature to adopt and estab-

lish. The series of bonds that included plaintiff's was properly payable prior to payment of bonds subsequently maturing, and the trial court should have so held. We think this has been the rule with respect to special assessment bonds that have relative maturities since and perhaps before the pronouncements in Bechtel v. Mostrom, 214 Iowa 623, 243 N. W. 361. In that case is a pronouncement that the law contemplates that bonds supported by special assessments for drainage ditches must be paid and retired in the order of their priority. There appears to be nothing materially distinguishing in that respect the statutes relating to drainage ditch bonds from the statutes considered in this case.

We have looked upon the question in the case at bar as one that depends upon the legislature's intention as found in the statutes. Cross-petitioners cite Iowa Des Moines National Bank & Trust Co. v. Dietz, 225 Iowa 566, 281 N. W. 134 and Central State Bank v. Commercial Building and Securities Co., 206 Iowa 75, 218 N. W. 622, and the Building and Loan Cases. But all of these authorities turned upon factual matters involved in the contractual relationships between the litigants. The maxim that ''equality is equity'' may with propriety be applied to ascertained facts, frequently fact situations the litigants have created. Cross-petitioners would apply the maxim to a situation the legislature created, as establishing inequity therein. Even if there be such inequity the legislature alone can remedy it. Cases are also cited from other jurisdictions that have to do with the relative priority of special assessment bonds. There is disagreement between them with respect to the soundness of the contention made by cross-petitioners in the instant case. As each case turns upon the statutes peculiar to the jurisdiction in which it arose it would be of slight value to review them.

It being our opinion that in the instant case each series of bonds was payable according to its maturity and that this is unaffected by the fact that the fund is insufficient to pay all the bonds, the trial court erred in decreeing that the funds on hand and to be derived from the outstanding assessments should be applied pro rata upon the outstanding bonds numbered 50 to 70 inclusive. There has not been argued in this court the question whether, as between the seven bonds of each series there is distinction as to the order in which they are entitled

to be paid, nor the question to what extent, if any, interest accrued, represented by coupons, upon bonds not yet matured, should be paid from the fund. The motion to dismiss the appeal as to the town of Danbury submitted with the case is overruled. The decree of the trial court is reversed and the cause remanded for decree not inconsistent herewith.—Reversed and remanded.

SAGER, HALE, MILLER, and BLISS, JJ., concur.

MITCHELL, J., dissents.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and respectfully dissent.

It seems to me that this case is controlled by the recent opinion of this court in the case of Iowa-Des Moines National Bank and Trust Co. v. Dietz, 225 Iowa 566, 574, 281 N. W. 134, 139, opinion by Justice Hamilton. I quote:

"While there are plausible arguments which have been ably presented by appellants in support of the proposition that the mortgage rule should be applied, we are inclined to agree with the trial court's conclusion. As long as the fund was solvent the order of payment of the ownership certificates provided for in the trust indenture was clear and explicit but when the fund became insolvent, a thing apparently not contemplated by the parties at the time, and the whole matter submitted to a court of equity, solution must be found by the application of equitable principles not inconsistent with the legal rights of the parties interested. There can be found in the trust indenture no language indicating an intent to create any preference as between holders of ownership certificates. All had a common interest in the trust fund in proportion to amount of ownership certificates held by each. The ownership certificates evidenced such interest or share in the common fund; their relation to this fund stands upon a common basis. Had the purpose intended been carried out none would have received more than his proportionate share in the entire fund. Their right to share in this common fund was thus intended to be equal, that is, without preference. Now that misfortune has overtaken the enterprise and the plan and purpose intended has been frustated through no fault of any of the parties interested, upon what principle of equity is the court justified in allowing a preference? They

all paid the same full consideration. We fail to see any meritorious grounds for applying any other rule than that of equality which is equity; where the original intent and purpose was that all should share equally and all stand on equally meritorious grounds, it is but a logical carrying out of this equitable principle to apply the pro rata rule.''

I would affirm the lower court.