IN RE TRUST OF HENRY W. LUNT.

No. 46476.

OCTOBER 17, 1944.

64

 ▄ 

McCoy & McCoy and Thomas J. Bray, all of Oskaloosa, for Walter L. Lunt, Trustee, Walter L. Lunt, Gordon R. Lunt, and Willie C. Lunt, appellants.

Stipp, Perry, Bannister & Starzinger, of Des Moines, for Elba Lunt Van Gorden and Mattie Lunt Van Gorden, appellees.

J. C. Eichhorn, of Oskaloosa, for Edward L. Butler, Trustee, appellee.

MANTZ, C. J.— I. The present controversy had its inception on July 6, 1943, when E. L. Butler and Walter Lunt, trustees of the Henry W. Lunt trust, filed in the district court of Mahaska County, Iowa, an application stating that they had on hand in a checking account of said trust about $4,600, and that in their judgment $3,750 of that account could be divided into five equal shares of $750 to each of the beneficiaries of said trust. They further stated that they were informed that there was a dispute as to the disposition of the share formerly owned by Willie C. Lunt, and that according to their information such share had been assigned to Gordon Lunt. The trustees prayed that the application be set down for hearing and notice given and upon hearing that they be authorized and directed to whom the respective shares should be distributed.

Following the filing of such application two of the beneficiaries of such trust, to wit, Elba Lunt Van Gorden and Mattie Lunt Van Gorden, made answer to the application and stated that Willie C. Lunt was a beneficiary in the Henry W. Lunt trust deed and that about April 7, 1925, that trust, through its trustees, paid out $7,500 for the use and benefit of said Willie C. Lunt, borrowed the same from the Aetna Life Insurance Company, and evidenced the same by note signed by the living beneficiaries and trustees payable to the Aetna Life Insurance Company, and secured by a mortgage on one hundred twenty-six acres of trust land known as the Gable farm in Mahaska county; that Willie C. Lunt agreed to pay said note and mortgage

and was primarily liable for the same; that on June 21, 1937, the mortgage was foreclosed and judgment rendered on the note against Willie C. Lunt and the other signers of the note, including the trustees of the Henry W. Lunt trust in the sum of $9,385.85; the land was sold under special execution on July 31, 1937, leaving a deficiency judgment of $2,107.98. They further answered that in equity and good conscience Willie C. Lunt's share and interest in said trust fund should be charged with the amount of said judgment with interest at five per cent from June 21, 1937.

They alleged that on June 16, 1937, in violation of the trust agreement, Willie C. Lunt conveyed his interest in such trust fund to Gordon R. Lunt, which conveyance was recorded July 9, 1937; that Gordon R. Lunt was not an innocent purchaser for value of said interest and took the conveyance subject to the charge against the same which existed as to Willie C. Lunt.

The answering beneficiaries prayed the court to order and establish a lien or charge against the share and interest of Willie C. Lunt and his successor and grantee, Gordon R. Lunt, as to said one-fifth interest of Willie C. Lunt, in the sum of $9,385.85 with interest from June 21, 1937, and that the amount of any distribution ordered made in the trust payable to said one-fifth interest be credited upon said charge until the amount thereof is fully repaid to said trust.

On August 16, 1943, Gordon R. Lunt filed a reply to the answer of Elba Lunt Van Gorden and Mattie Lunt Van Gorden, and denied all allegations except those expressly admitted; admitted that Willie C. Lunt, beneficiary, on June 16, 1937, conveyed his interest in the trust property held by the trustees to him; admitted the recording of the conveyance and denied the allegation of the answer that he was not an innocent purchaser for value of the interest of Willie C. Lunt and stated he purchased said interest for valuable consideration and without knowledge or notice of the claim as set forth by the answering beneficiaries, and pleaded further that the so-called action against him was barred by the statute of limitations and laches.

Walter L. Lunt, as trustee and individually, adopted the

pleadings of Gordon R. Lunt and amended the reply and alleged that the $7,500 paid out for the benefit of Willie C. Lunt was obtained on a note to the Aetna Life Insurance Company by the then trustees of the Lunt trust and all of the beneficiaries of said trust except Gordon R. Lunt; that said note was secured by a mortgage on one hundred twenty-six acres of trust land, signed by the trustees and all of the beneficiaries of the trust and their spouses, except Gordon R. Lunt; that the money was paid to the Rose Hill Savings Bank to satisfy indebtedness then owing by Willie C. Lunt; that the payment of said money to the bank did not create or constitute a debt from Willie C. Lunt to the trust, is not recoverable, and that the interest transferred by Willie C. Lunt to Gordon R. Lunt is not chargeable therewith; that Elba Lunt Van Gorden and Mattie Lunt Van Gorden are estopped to assert or claim that the money voluntarily paid to the bank to discharge the debt of Willie C. Lunt is a debt owing by him to said trust and are also estopped to assert or claim that the share of Willie C. Lunt conveyed to Gordon R. Lunt is subject to or chargeable with the money paid to the creditor of Willie C. Lunt.

In short, it was the claim of Gordon R. Lunt that Elba Lunt Van Gorden and Mattie Lunt Van Gorden had asked the court to establish a lien against the one-fifth interest of Willie C. Lunt and his grantee in the sum of $9,385.85 but that the court ordered the lien be established in the sum of $30,000.

In its decree the court ordered the trustees to withhold any distribution on the interest Gordon R. Lunt acquired from Willie C. Lunt until after the other four beneficiaries of said trust had been paid the sum of $7,500 each and that the distribution of the $750 proposed to be paid to said Gordon R. Lunt on said share of Willie C. Lunt be applied to the payment and distribution of the other four interests.

From this decree appeal was taken by Gordon R. Lunt, Willie C. Lunt, Walter L. Lunt, as an individual and also as trustee. Appeal was also taken by Elba Lunt Van Gorden and Mattie Lunt Van Gorden from an order of the court authorizing Walter L. Lunt, trustee, to appeal from the decree of the court and for that purpose to employ counsel to represent him at the expense of the trust.

Herein the first named will be referred to as appellants; the last named, as appellees.

The other trustee, Edward L. Butler, did not join in either of the appeals.

We will first consider the appeal of Gordon R. Lunt, Willie C. Lunt, and Walter L. Lunt, as an individual and a trustee.

II. In essence, the principal controversy relates to the disposition to be made of the trust income going to the share formerly owned by Willie C. Lunt and later by him conveyed to Gordon R. Lunt. Appellees claim that the entire amount paid by the trust in 1925 for and on behalf of Willie should be charged to his former share.

Appellants contend that no such claim can be legally granted and urge as a defense the statute of limitations, laches, estoppel, and that Gordon purchased the share of Willie in good faith and for a valuable consideration.

As above stated, the lower court charged the one-fifth share formerly owned by Willie, and its income, with the payment of $7,500 advanced to Willie in 1925.

Few of the facts are in dispute. The creation of the trust and its operation; the properties included therein; the beneficiaries; the death of Johnson R. Lunt, a beneficiary, in 1922, and of Henry W. Lunt in 1923; the occupancy and control of a certain one hundred twenty-six acres included in said trust by Willie C. Lunt, a beneficiary; the financial difficulties of Willie at and prior to 1925; his obligation to the bank for a sum in excess of $7,500; the meeting of the trust beneficiaries to discuss the financial situation of Willie; the securing of a loan of $7,500 on the one hundred twenty-six acres from the Aetna Life Insurance Company, and its use in paying off the obligations of Willie at the bank; the signing of the note and mortgage by all of the trustees and living children of Henry W. Lunt; the foreclosure of the mortgage in 1937; the judgment and special execution sale of the one hundred twenty-six acres to the mortgagee with a deficiency judgment of $2,107 against the makers of the note and mortgage; the conveyance by Willie to Gordon of his share and interest in the trust before the judgment of foreclosure; and the accumulations of trust income of over $4,600 on July 6, 1943, are matters not in dispute.

While this trust was created in 1910, it seems to be conceded that prior to 1943 the trustees did not seek to make distribution of any of the trust income. Under the trust agreement the income was pledged to the care, support, and maintenance of Henry W. Lunt, the grantor therein. The record shows that following the foreclosure sale of the one hundred twenty-six acres in 1937, leaving the deficiency judgment of $2,107, there were no funds on hand in the trust to pay said deficiency, and that appellees herein, at the request of one of the trustees, paid said deficiency out of their own funds. It is quite evident that the $3,750 offered for distribution was from income following 1937.

The trust agreement creating the same provided that the trustees should manage the trust properties and receive the income therefrom and pay expenses and upkeep, and contains the following:

"* * * and after paying all expenses annually as hereinbefore provided, my Trustees shall pay and divide all the income remaining among my said five children in equal shares, and should any of my five children depart this life before the determination of this trust then such annual net incomes shall be equally divided into five shares and the portion that should have gone to my deceased child or children, if living, shall go to their heirs or legal representatives in such proportions as is provided for by the laws of the State of Iowa."

When the trustees made application for division of the income they were following the provisions of the trust agreement. The trust was created in 1910 by Henry W. Lunt, grantor, and was for the use of grantor, his children and their children, and except as otherwise provided was not to determine until the death of the last surviving child of the children named therein. Most of the property included in the trust was real estate. The trust agreement provided for the control and management of the property, and just before the signatures of the grantor, trustees, and beneficiaries there appears the following:

"For the mutual performance of all the conditions and agreements herein expressed we all hereunto, grantor, trustees,

and beneficiaries sign our names and attach our seals, binding ourselves, heirs and legal representatives, this 3rd day of January A. D. 1910.''

On the same date the trustees and beneficiaries entered into a written copartnership agreement known as the Lunt Farm Company, to handle the trust property. This contract provided that Willie C. Lunt, a beneficiary, was to have control of a one-hundred-twenty-six-acre. farm belonging to such trust. This copartnership matter is not involved in this proceeding.

Much litigation has ensued following the creation of the trust. At least seven appeals have been passed upon in this court. The first one was in 1933. Lunt Farm. Co. v. Hamilton, 217 Iowa 22, 250 N. W. 698; Lunt v. Van Gorden, 224 Iowa 4, 275 N. W. 579; Lunt v. Van Gorden, 224 Iowa 1323, 278 N. W. 631; Lunt v. Van Gorden, 225 Iowa 1120, 281 N. W. 743; Lunt v. Van Gorden, 229 Iowa 263, 294 N. W. 351; In re Trust of Lunt, 232 Iowa 397, 4 N. W. 2d 231; Van Gorden v. Lunt, 234 Iowa 832, 13 N. W. 2d 341. Such appeals for the most part concern the nature of the trust, its duration, operation, management and control, and the relative rights of the persons interested therein. It survived the depression but was not able to accumulate an income sufficient for distribution to the various beneficiaries until sometime after 1937.

The principal matter involved concerns a loan of $7,500 placed by the trust on a one-hundred-twenty-six-acre farm owned by it and controlled by Willie C. Lunt, a beneficiary, in 1925. Willie had become involved in financial difficulties, being indebted to the Rose Hill bank in a sum in excess of $7,500. To secure this debt Willie had encumbered his interest in the trust. He felt that the interest charge by the bank was excessive and this was discussed at a meeting of the various members of the family, all of them being beneficiaries under the trust agreement. This meeting was for the purpose of assisting Willie in his financial difficulties. We think that a fair inference is that Willie was anxious to pay his bank obligation and sought to secure a loan on the one hundred twenty-six acres for that purpose. The loan was secured by all of the trustees and living children signing the note and mortgage. Johnson R. Lunt, a

beneficiary, was deceased at that time and his successor in interest, Gordon R. Lunt, appellant herein, did not sign either instrument. The proceeds of the loan, $7,500, were used exclusively to pay Willie's bank obligation. The trustees did not receive any of the proceeds. Willie testified that he sought the loan and that its proceeds were applied to his individual debt.

When the loan became delinquent the mortgagee sued for judgment on the note and foreclosure of the mortgage. Both Willie and Gordon were defendants. The latter filed answer contesting the right of the mortgagee to maintain action against him (Gordon) as the successor of Johnson R. Lunt. The trial court denied this claim of Gordon's. When the case was tried both Willie and Gordon were in court and Willie, as a witness, described his financial condition and the situation culminating in the procurement of the $7,500 loan and the disposition of the proceeds. It was during this proceeding and before decree that Willie conveyed all of his interest in the trust to Gordon. This conveyance necessarily would include whatever rights Willie had in the equity of redemption to the one hundred twenty-six acres. Following the special execution sale, leaving a deficiency judgment, the appellees, at the request of Cole R. Van Gorden, one of the trustees, paid the same in the sum of $2,107 and later brought suit to recover such sum paid from the trust. This court held that the trust was not liable in that the $7,500 was not used for trust purposes. Van Gorden v. Lunt, 234 Iowa 832, 836, 13 N. W. 2d 341, 344. However, we think that the holding of the court therein has a bearing on the controversy herein. Garfield, J., speaking for the court, stated:

"True, execution of the note and mortgage by the trustees, with the consent of the living children, was authorized by the trust deed. This was determined in the foreclosure. Liability to the Aetna was thereby established. But the trustees had no right under the trust deed, *as against a beneficiary who did not consent, to borrow money for the purpose of paying the individual debt of Willie.* Trustees can exercise only such powers as are specifically conferred by the terms of the trust or necessary or appropriate to carry out the purposes of the trust and not forbidden by its terms. Restatement of the Law, Trusts,

section 186. See, also, sections 254, 255, and comments thereunder, dealing with overpayments and loans by the trustee to one beneficiary. To sanction an overpayment to one beneficiary out of the trust estate would result in unjust enrichment to that beneficiary. 2 Scott on Trusts, 1443, section 254.2.'' (Italics supplied.)

As applied to the language above quoted, the net result of the Aetna loan and foreclosure was that Willie received $7,500 to pay his individual debts and the trust lost the one hundred twenty-six acres. The claim made by appellees against the former share of Willie is in the nature of a contribution—that is, that such share receive no distribution until the other four shares have each received a like amount.

Appellants argue that this case is controlled by the decision in Van Gorden v. Lunt, 234 Iowa 832, 837, 13 N. W. 2d 341, 344, which was an action by the present appellees against the trust to compel repayment to them of the deficiency judgment in the foreclosure action. We do not think that the court in that case passed upon the liability of Willie's share, the question being expressly reserved. We quote from that decision:

''Whether they [appellees] are entitled to relief against either trustee individually or the beneficiaries of the trust who consented to the Aetna note and mortgage and joined therein or against the interest formerly owned by Willie are questions that are not before us.''

In a true sense, the proceeding herein is not one by appellees against Gordon R. Lunt, Willie C. Lunt, or the trustees. Gordon has argued throughout designating appellees as plaintiffs and he and the other appellants as defendants. The trustees, officers of the court under the trust agreement, made application to the court for orders for distribution of certain trust income. They suggested distribution of four shares; as to the fifth share they asked the court to instruct them. Two of the beneficiaries, appellees herein, by their answer called the court's attention to the fact that in 1925 the trust had obligated itself on behalf of Willie C. Lunt, a beneficiary, for personal obligations of Willie to the extent of $7,500, and that later, as a result of such act,

the trust estate lost the one-hundred-twenty-six-acre farm. That answer asked no judgment against the trustees, Willie, or Gordon, but did ask that Willie's former share be held liable to repay the trust for the loss incurred by said loan.

Trustees derive their authority from the instrument creating them. Independent of that instrument, one of their principal duties is to protect and conserve the trust property. From its inception this trust has been under supervision of the court.

"The trustee is under a duty to the other beneficiaries to withhold payment from the wrongdoing beneficiary until the loss is made good. This is an application of the general principle that a person who is entitled to participate in a fund and who is also bound to contribute to the fund cannot receive the benefit without discharging the obligation." 2 Scott on Trusts, 1438, section 253.

At page 1440, section 254, of said work, we find the following:

"If the trustee by mistake makes an overpayment to one of the beneficiaries of the trust, the beneficiary would be unjustly enriched if he were permitted to retain the amount of the overpayment. He should not be permitted to profit as a result of the trustee's mistake. Not only is the beneficiary personally liable for the amount of the overpayment, but his interest under the trust is subject to a charge for its repayment."

The net effect of what was done to secure the Aetna loan was to make an advance to Willie. Whether rightfully or otherwise, the trust pledged the one-hundred-twenty-six-acre farm as security for the $7,500 secured to pay the personal obligations of Willie and to preserve the trust property intact. It is to be kept in mind that this act of the trustees and other living beneficiaries was at the instance and request of Willie and was for his sole benefit. At no time has Willie, or his grantee, Gordon, ever taken any steps to disaffirm his action in procuring the loan. Neither have they repaid the trust for the amount so advanced. The loan secured could hardly be considered a gift to Willie; no interested party so contemplated it.

In Restatement of the Law, Trusts, section 255, it is stated

that if a trustee makes an advance or loan of trust money to a beneficiary, the beneficiary's interest is subject to a charge for repayment of the amount advanced or lent, at least if the trust is not a spendthrift trust. Also 255(b):

"If the trustee out of the trust estate makes an advance to the beneficiary, that is a payment to the beneficiary before the time when by the terms of the trust the payment should be made, the interest of the beneficiary in the trust estate is subject to a charge for the repayment of the amount so advanced."

We quote further, from section 251(a) of such Restatement of the Law, Trusts:

"If a third person is liable to pay money into the trust, the liability may be enforced by a proceeding against him brought by the trustee or by a proceeding brought by the beneficiaries to which the trustee should ordinarily be made a party * * *. In the case where it is one of the beneficiaries of the trust who is liable, there is a further remedy in the enforcement of a charge upon his interest. He is not entitled to receive his share of the trust estate without discharging his liability."

See, also, In re Trusteeship of Siberts, 216 Iowa 336, 249 N. W. 196; Welch v. Welch, 235 Wis. 282, 290 N. W. 758, 293 N. W. 150; In re Van Nostrand, 78 Hun 351, 29 N. Y. Supp. 112; Moss v. Cohen, 158 N. Y. 240, 53 N. E. 8.

III. Appellants argue that the trust, by its act of making the loan, gave away the one-hundred-twenty-six-acre farm belonging to the trust and that there was no possible benefit to the trust in so doing. The statement is open to question as to its accuracy. There may be some question as to whether there was no benefit to the trust in placing the loan. We must view the situation as it stood in 1924 and 1925. Willie, owner of a one-fifth interest of the trust estate, was deeply involved, with extensive obligations outstanding. Indeed, he says that in 1924 and 1925 he was bankrupt. There was his prior mortgage on the one hundred twenty-six acres in the amount of $8,500. To have a judgment at that time for that amount against Willie would have created a lien on Willie's interest in the five farms included

in the trust and that would not have been for the benefit of the trust. Such might have interfered with the operation of the trust, possibly causing its ending or dissolution—something foreign to the purpose of the grantor. Viewed in the light of the situation as it existed in 1924 and 1925, there could exist honest doubts as to what was the best course to pursue. Willie was asking for the loan, the trust agreement permitted it, and it seems to us that it would be highly inequitable to permit the share of Willie to escape repayment of a just obligation. Where would there be any reason or justice in requiring the other four beneficiaries to stand the loss of property in the estate and the one benefited to take advantage of his own act?

IV. Appellants likewise argue that equity will not permit a person to take advantage of his wrong, or permit him to take advantage of a situation brought about by his own conduct. They cite many authorities in support thereof. No quarrel is had with the legal principles so·announced. The difficulty lies in the fact application. Appellants start with the premise that the loan to the Aetna came about by the wrongdoing of appellees. They thereby put Willie in the position of a person being wronged—the innocent bystander. Looking at it from such a theory, these appellees and the other living children and the trustees, acting as good Samaritans, obligated themselves and their property to pay the personal debts of Willie. They, not Willie, were the losers.

The court below found that Willie owed the bank; that he could not pay; that the Aetna loan was made to pay his debts; and that Gordon R. Lunt purchased the share of Willie in the estate. We think the record confirms this finding by substantial evidence. We go further and hold that the evidence shows that it was at the request and suggestion of Willie that the $7,500 loan was made. Appellants cite the case of Luttschwager v. Fank, 151 Iowa 55, 130 N. W. 170, in support of their claim that one cannot take advantage of his own wrong. That case is readily distinguishable from the present on the facts. That was a land sale. The contract was signed by the husband and not by the wife. She failed to sign upon the assurance of the scrivener that it was not necessary. The buyer attempted to repudiate on account of her not signing. When the wife found

that it was necessary for her to sign she at once offered to do so. The purchaser refused and the court held that the buyer could not in equity take advantage of his own wrong or be permitted to take advantage of a situation brought about by his own conduct and representations.

To apply the holding of the Fank case would be to put a premium on the acts and conduct of Willie C. Lunt.

V. Appellants further argue that the "action" is barred by the statute of limitations. The proceedings were in equity and had to do with the accounts of the trust. Even if it were barred under the statute, still it could be used as an offset where a retainer is sought against the one who owes. In that event it would come within the spirit of Code section 11019. The lower court, in order to do equity and equality among the various shares, ordered a retainer of any income due the former share of Willie in order to repay the advance made to that share when the loan was made.

Appellant Gordon R. Lunt argues that the claim is barred by statute. Neither he nor his grantor, Willie, even hints that they have ever repaid the $7,500, or any part of it. If the trustees and others interested under the trust agreement were to sell the trust property and reduce the same to cash and Willie should bring suit for a one-fifth share thereof, is there any question that the trustee or any other beneficiary could urge an offset or retainer to the extent of the sum advanced to Willie, regardless of the statute of limitations?

We have here involved a trust. It is a general rule that as between a cestui que trust and a trustee the statute of limitations does not apply. Packer v. Overton, 200 Iowa 620, 203 N. W. 307; 2 Woerner on Administration, Third Ed., 1326, section 402. Angell on Limitations, Sixth Ed., 91, section 90, dealing with the matter of legacies charged against land, states:

"The plea of the statute of limitations to an ordinary action of a *legacy* has never been known; it has long been a settled principle that the statute does not apply in such a case; and it has been ever so understood in England, both in the common-law and ecclesiastical courts. Chancery has refused to adopt the rule by analogy to the statute, because an executor

stands in the relation of a trustee, *and whilst the trust subsists,* the statute has not been permitted to run.''

In support of their claim that the appellees are not entitled to the relief given them by the court, appellants cite the case of Anderson v. Anderson, 234 Iowa 277, 12 N. W. 2d 571. We do not think that case is authority for the claim made. There exists a pronounced factual difference. In that case the devisee of a remainder interest in land was required to pay to the life tenant an annual rental of $3 per acre. This court held that these annual payments were equitable liens and that the statute of limitations applied. The case made a clear distinction between an equitable lien and a trust. See Packer v. Overton, supra, and cases there cited. In that case there was an application by a legatee to require the executor or administrator to make distribution. Therein this court said, at page 624 of 200 Iowa, page 310 of 203 N. W.:

''It was a continuing obligation on the part of the estate, and remained so until final settlement or an order to pay the legacy was entered by the court. It is the general rule that, as between cestui que trust and a trustee, the statute of limitations does not apply.'' See annotation 116 A. L. R. 54.

We think that the Anderson case does not apply in that no trust was involved.

In this case appellant Gordon R. Lunt is claiming, under the share owned by Willie, the right to share equally in the distribution of the income and to hold said share free and clear of any claim of the trust for the repayment of the $7,500 advanced to Willie by the trust.

Strictly speaking, this is not an estate matter; yet it seems to us that the general rules as to settlements, accounting, retainer, offset, and distribution should apply in trusts as well as in estates. See Lohman v. Mockler, 190 Iowa 578, 584, 180 N. W. 644, 647; Senneff v. Brackey, 165 Iowa 525, 146 N. W. 24, 1 A.L.R. 978; Garrett v. Pierson, 29 Iowa 304.

The court, in the Mockler case, supra, quotes from Rogers v. Murdock, 45 Hun 30, 33, 9 N. Y. St. Rep. 660, 661, the following:

" 'If, in the present case, the executor were suing to recover the claims above mentioned, the rule [statute of limitations] would apply; but that is not the case. The only object of the proceeding instituted by the executor is to settle his accounts and distribute the assets of the estate. * * * And as no affirmative action has been instituted, or is necessary on his part, to make his lien and right of detention available, the statute of limitations does not stand in his way.' "

In this case the trustees were simply trying to settle their accounts as between the beneficiaries. The trustees sought to be advised to whom distribution should be made at present and in the future. We do not think the statute of limitations applies under the factual situation.

VI. At the time Gordon R. Lunt took the conveyance from Willie he had both knowledge and notice of the mortgage and the action to foreclose. He was a defendant in the foreclosure action, filed answer resisting the same, and testified as a witness, along with his grantor, Willie C. Lunt. Before decree therein he took a conveyance of Willie's share of the trust. Under this record Gordon stands in the shoes of Willie and takes whatever interest Willie had, subject to any charges and equities against the vendor. Senneff v. Brackey, supra; annotation 123 A. L. R. 1323. In Jenkinson v. New York Finance Co., 79 N. J. Eq. 247, 82 A. 36, that court held that the assignee from a trust beneficiary who was a debtor to the estate could not claim a beneficial interest without discharging the debt. In Restatement of the Law, Trusts, section 251(d), we find a statement of the rule:

"Where the interest of a beneficiary of a trust is subject to a charge, the charge is enforceable not only against the beneficiary himself but also against transferees, voluntary or involuntary, of his interest, although the transferee is a purchaser for value and without notice of the charge. Thus, it is enforceable against persons to whom he has assigned his interest, against creditors seeking to reach his interest by equitable execution or otherwise, and against his trustee in bankruptcy."

See, also, Bogert, Trusts and Trustees, 536, 538, section 192, wherein it is stated that:

"The interest of the assigning cestui may be subject to other equities, as, for example, the equity to restore to the trust fund excess payments made to him by the trustee. In such a case an assignee of the cestui takes subject to the necessity of having his share reduced to the extent required to restore the overpayment."

The transaction of the loan from the Aetna Life Insurance Company was simply to relieve the necessities of Willie C. Lunt. The lower court held that the share of Willie must be placed on an equality with the other four shares and that to do this the part advanced must necessarily be repaid. In regard to this share Gordon's claim can rise no higher than Willie's. We hold that Gordon, in respect to the share which he received from Willie, is in no better position than Willie.

VII. Appellants state as a defense, "Plaintiffs' alleged action is barred by laches." This statement is evidently based upon the premise that appellees are plaintiffs bringing action against Willie and Gordon. Such is not the record here. The trustees were seeking to secure an adjustment of the accounts and rights of the various beneficiaries in and to the trust property—no personal action, no prayer for personal judgment.

In support of such claim appellants cite Bristow v. Lange, 221 Iowa 904, 266 N. W. 808; Olson v. Larson, 233 Iowa 1032, 8 N. W. 2d 697. Both of these cases were in equity to set aside claimed fraudulent conveyances. We do not think that these cases apply under the situation. While appellants pleaded the statute of limitations and laches, we find nothing in the record to support the pleading of laches. Such is an affirmative defense and must be supported by the pleaded proof. To merely argue will not suffice. See Tedrow v. Johnson, 167 Iowa 513, 149 N. W. 645.

VIII. Appellants claim that the action must be dismissed in that appellees did not have a judgment or attachment against the land and they did not establish that the deed was fraudulent.

This claim is directed toward the conveyance of June 16, 1937, from Willie to Gordon. We do not find that appellees

seek to set aside such transfer; neither do they claim that such conveyance was fraudulent. The rule that before a transfer can be set aside there must be a judgment finding the conveyance to be fraudulent has no application under the record in this case.

Appellees claim that the share of Willie is subject to the claim of the other beneficiaries for contribution, and that Gordon, in purchasing such share, was charged with notice of the claims which the other beneficiaries were making that Willie, by receiving the $7,500, was securing an enrichment of that amount over the other beneficiaries. By purchasing such share, Gordon took the same charged with the claims and equities existing between such share and the other trust shares. Parkhill v. Doggett, 150 Iowa 442, 445, 130 N. W. 411, 412; 65 C. J. 546, 550, section 303; Restatement of the Law, Trusts, section 251(d).

In the Parkhill case a person bought certain shares of a trust estate and sought to avoid costs and charges against the trust interest. The court held that the purchaser took title charged with the liability for costs and expense which attached to the share of the property conveyed in the hands of the trustee or the wards. This court said:

"* * * but the court, after settling the amount of such charges, will provide for their payment from the trust fund. This is an elementary rule everywhere recognized, and is universally applied in the settlement of all trusts."

Under the authority of the above holdings it would make no difference whether Gordon purchased the share of Willie with knowledge of the claim which the trustees would have against Willie or his share of the trust estate. That Gordon was or was not an innocent purchaser of that share would be immaterial.

IX. In a division of the reply brief of appellants it is argued that appellees are estopped to assert the claim which they are alleged to be making herein and that the argument upon that point as made in appellants' opening brief has not been answered.

We have examined the opening brief of appellants and find that they did not set forth such ground as being relied upon

for reversal. Neither do we find such claim of estoppel there specifically argued.

The point being neither made nor argued in opening argument, it could hardly be expected that appellees would argue the same; hence, the claim of appellants in their reply argument that appellees had failed to answer their argument is without point.

We have some doubt as to whether the point was raised by appellants in their points set forth for reversal. As the same was presented in the reply argument, no opportunity was afforded appellees to answer in their brief.

It is elementary that estoppel, to be relied upon, must be pleaded. Maloney v. Rose, 224 Iowa 1071, 277 N. W. 572; Wilson v. Lindhart, 216 Iowa 825, 249 N. W. 218. The burden of proof is upon the party alleging and relying on the estoppel. In Baldwin v. Lowe, 22 Iowa 367, this court held that estoppels are not favored at law and must always be clearly proved. Howell v. Goss, 128 Iowa 569, 105 N. W. 61; City Bank v. Alcorn, 188 Iowa 592, 176 N. W. 628.

In an amendment to a reply to the answer of appellees filed by appellants, the appellants allege that appellees:

"'* * * are estopped to assert or claim that the money which they voluntarily caused to be paid to the Rose Hill Savings Bank in discharge of indebtedness owing by Willie C. Lunt to said Bank is indebtedness owing by him to said trust, and they are estopped to assert or claim that the share of Willie C. Lunt in the trust property conveyed to Gordon R. Lunt was subject to or chargeable with the money so paid to the said creditor of Willie C. Lunt.''

Appellants contend in the main that the transaction of securing the $7,500 loan, participated in by Willie and the appellees, and the application of the proceeds of such loan to the share of Willie, estop appellees from claiming that the share of Willie is liable therefor. In support of such contention appellants in argument indulge in statements having little support in the record:

"One cannot make his own wrongdoing the ground for an action in his own behalf. * * * Whatever they lost was

caused by their own acts and conduct. They engineered the obtaining of the loan by the Trustees. * * * Each of them were willing to lose their fifth interest in the one hundred twenty-six acres of trust land occupied by Willie C. Lunt in order to keep an outsider from becoming a beneficiary of the trust. Not only did appellees bring this loss upon the trust, but when default was made in the payment of the money borrowed from the Aetna Life Insurance Company and an action was brought to foreclose the mortgage securing the debt, they made no effort to protect the trust by filing a cross-petition in that action to obtain a judgment against Willie C. Lunt, but they very positively refrained from so doing.''

The above are some of the assertions made by appellants in support of their claim of estoppel. Few of such statements have support in the record. We have heretofore held that Willie sought the loan to further his interest by getting a lower interest rate; that it was made at his solicitation and used to pay his debts; and that when Gordon bought his interest in the trust estate he had knowledge of the loan and its nature; and further, that under such conditions Gordon had no higher rights in and to the share purchased than did Willie.

Gordon argues that appellees purposely refrained from filing a cross-petition asking that judgment be taken against Willie and that they did everything in their power to assist the Aetna Life Insurance Company in the foreclosure. Gordon was a party, as was Willie, and the record shows that they worked in close collaboration. Gordon, or any person interested, could have asserted such a claim. However, none of the defendants to the foreclosure action was obliged to file a cross-petition against either Willie or Gordon.

Appellants showed no facts which would constitute an estoppel and we think that in the light of what does appear they are not in a position to so claim, conceding for the purposes of this discussion, that the matter is properly before this court.

X. Another proposition which the appellants presented for reversal was that, ''Willie C. Lunt had the right to sell or mortgage his interest in the trust estate.''

Appellees claim that the making of the conveyance from

Willie C. Lunt to Gordon R. Lunt was a violation of the trust agreement and was null and void.

In the finding of facts, conclusions of law, and decree, the court apparently did not pass directly upon this issue. In the finding of facts, the court recites: "That Gordon R. Lunt purchased the interest of Willie C. Lunt in said trust estate." It is not mentioned in the decree.

Regardless of the action of the court, we may say that we do not think the trust agreement prohibits the sale or conveyance of the share of any beneficiary. It provides that the trust instrument was intended to "operate as an absolute transfer in Trust, for the benefit of each and all of my children whose interest in said trust property is an undivided one fifth each, and conveying to them the full and absolute title thereof and thereto of all of said real estate subject to the trusts herein created." In a preceding part of the trust agreement there was a provision as to a sale, transfer, or conveyance of any or all of the trust property. We think that this provision had application where any or all of the trust property was being sold or conveyed absolutely and outside of the trust.

In this case a sale by Willie to Gordon of the share of the former still left that share within the trust. We think that such transfer did not violate the terms of the trust agreement.

Inasmuch as the court in its finding did not declare the conveyance invalid, we are unable to see wherein appellants have been prejudiced. Assuming that the finding of the court was that Willie had a right to convey to Gordon, we are at a loss to understand why appellants were urging such as a ground for reversal.

XI. Appellants argue that even if the claim was trust property it may not be set off against the share of Willie in the real estate because appellees did not allege and establish that he was insolvent. Again appellants argue on the assumption that appellees are plaintiffs—that is, that they brought an action.

Appellants argue that the right of retainer does not apply to real estate if the distributee is solvent. No such claim was made by the trustees or appellees. Neither is it necessary. This

point was recently passed upon by this court, in In re Estate of Ferris, 234 Iowa 960, 989, 14 N. W. 2d 889, 904. The writer, Bliss, J., in dealing with that question, made a very thorough and complete analysis of the subject and the cases from this and other jurisdictions, going into the history and origin of the right of retainer and setting forth the distinction made in some jurisdictions between personal and real property where retainer is sought to be applied. The analysis therein made of the subject, the holdings of various courts, and rules laid down, is thorough and complete. Therein this court aligned itself with what may be termed the majority rule, and held that the right of retainer could be exercised, both as to real and personal property, regardless of the solvency or insolvency of the debtor. The opinion cites many cases and quotes at length from other jurisdictions. Among the Iowa cases referred to is that of Wilson v. Wilson, 226 Iowa 199, 283 N. W. 893, the principal case relied upon by appellants on the matter of retainer. Speaking of this case, along with others from this court purporting to sustain the principle therein announced, to wit, insolvency must be pleaded and proved to permit retainer where real estate is involved, this court stated:

"Insofar as any of those cases, or others, allowed retainer against real estate, their results are right; but insofar as they hold that it was essential to establish that the heir or devisee was insolvent in order to permit the exercise of the right of retainer against real estate, those decisions are erroneous and are overruled."

Therein, in dealing with the announced rule, the court stated, at page 992 of 234 Iowa, page 905 of 14 N.W. 2d:

"We might not hesitate to follow the contention of the appellant and the decisions in the Indiana and earlier Alabama cases if there were no other alternative, but, since preponderating precedent and sound principles of law, equity, and justice clearly sustain our conclusion that the right of retainer is applicable to both real estate and personal estate, without regard to the solvency or insolvency of the heir, we prefer not to place our decision on the narrower and questioned ground."

84

It is our conclusion that a showing of the insolvency of the appellant Willie C. Lunt was not essential to the sufficiency of the application to entitle the trust to an order to retain and apply the income due the distributive share formerly owned by him, or sufficient thereof, to the payment of his debt to the trust.

It is quite evident that the above holding as to retainer rights was based on the broad and sound equitable right which grows out of the moral as well as the legal duty of a debtor to pay his debts to the estate in order to participate in the distribution thereof.

It seems to us that the language of the court in the case of Smith v. Kearney, 2 Barb. Ch., N. Y., 533, 549, goes to the very fundamentals of the matter. We quote:

"* * * the right to retain depended upon the principle that the legatee or distributee was not entitled to his legacy, or distributive share, while he retained in his own hands a part of the fund out of which that and other legacies, or distributive shares, ought to be paid, or which were necessary to extinguish other claims on that fund. * * * And it is against conscience that he should receive any thing out of the fund without deducting therefrom the amount of that fund which is already in his hands, as a debtor to the estate."

It is but fair to counsel to call attention to the fact that the briefs and arguments herein were doubtless prepared prior to the filing of the opinion in the Ferris case.

We hold that the rule announced in that case is controlling herein and that the point raised by appellants in this case cannot be sustained.

The controversy herein involves the operation of a trust estate. We think that the consideration and disposition of the matters in dispute call for an application of equitable principles. Bearing in mind the operations leading up to the application of the trustees for distribution, and the results of such operations, we think that certain equitable maxims can be here properly applied. "Equality is equity." Central State Bank v. Commercial Building & Securities Co., 206 Iowa 75, 218 N. W. 622. To permit the former share of Willie to be enriched over the other four shares to the amount of $7,500 would do violence

to this maxim. "He who seeks equity must do equity." Warner v. Tullis, 206 Iowa 680, 218 N. W. 575; King v. Bolt, 151 Iowa 1, 130 N. W. 818; 30 C. J. S. 458, section 90; 2 Pomeroy's Equity Jurisprudence 51, section 385. Neither Willie nor Gordon has ever offered to return to the trust the property advanced by it to Willie. Willie got the $7,500; the trust lost the one hundred twenty-six acres. We think the maxim, "He who comes into equity must do so with clean hands," and the other, "Equity regards the substance rather than the form," have pertinent application here.

To permit the share of Willie C. Lunt to retain the $7,500 advanced by the trust to pay his personal obligations and then to share equally with the four others in the trust would be as shocking to the conscience as it would be violative of the cardinal principles of equity.

We have considered the other matters argued by the parties herein. We are of the opinion that the lower court did not err in holding that the share formerly owned by Willie C. Lunt was not entitled to participate in the trust estate or income until the four other shares had been .equalized by a repayment as ordered by the court.

XII. In the cross-appeal taken by appellees the complaint centers around the order of the lower court granting to Walter L. Lunt, a trustee, the right to appeal from the order of the lower court and to employ counsel therefor at the expense of the trust. This order was granted following application therefor and upon notice.

The controversy followed an application by the trustees for an order of court authorizing distribution of trust income. Both trustees joined in such application. The income sought to be distributed came from the trust property. The trustees were not interested save to see that the income was distributed as ordered by the court. While it is the duty of the trustees to protect and conserve the trust property, yet, as between the various beneficiaries, they stand indifferent. We are unable to see wherein the trust would benefit by this appeal. To permit this one trustee to appeal and to incur costs and expense which would be a charge against the trust estate would be inequitable.

Under the statute costs are taxed against the loser. Section 11622, Code, 1939.

The real party in interest in this appeal is Gordon R. Lunt. It is clear from the record that Gordon, Willie, and Walter have worked in close collaboration in this proceeding. To require the trust to finance the appeal of Walter, as trustee, would not benefit anyone save Gordon, if successful. The share which he purchased from Willie has been ordered to make restitution for the amount paid out on behalf of Willie. To defeat this order would benefit no one except Gordon. We do not think the expense of such an enterprise should be charged against the estate.

The order allowing Walter L. Lunt, trustee, to appeal at the expense of the trust, in effect, would cast at least a part of such expense upon the shares of the beneficiaries Elba Lunt Van Gorden and Mattie Lunt Van Gorden. They are not objecting to the appeal except insofar as it will cast the costs thereof upon the trust. Granted that Walter L. Lunt, trustee, has a right to appeal, still it does not follow that the trust should bear the expense created by such appeal. In the case of In re Estate of Hartman, 233 Iowa 405, 412, 9 N. W. 2d 359, 363, there was presented to this court a question similar to the one presented by the cross-appeal. In that case certain persons as executors, trustees, and individual legatees took an appeal from an order of court adverse to them and sought to charge the expense of so doing upon the estate and secured an order of court authorizing them to do so. Appellees objected, claiming that it would impose a burden upon them with no benefit to the estate and that the appellants should bear such expense. We quote briefly from the opinion:

"We think the costs of this appeal are properly taxable to the individual appellants and it is so ordered. The real contest is between them and the appellee. The executors as such are indifferent. Had the cause been reversed, the individual appellants alone would have benefited. The appellee is the successful party and the individual appellants the losing parties, within the meaning of section 11622, Code, 1939." Citing cases.

The same question was presented in the case of Fleming v. Casady, 202 Iowa 1094, 1104, 211 N. W. 488, 493, wherein this court said:

"A trustee has no authority to employ counsel at the expense of the estate to represent the interest of one beneficiary, in hostility to that of another. To permit him to do so would be to allow the trustee to pay from the property of one litigant the counsel fees of his opponent."

See, also, Van Gorden v. Lunt, 234 Iowa 832, 13 N. W. 2d 341; annotation 49 A. L. R. 1150, 1160.

While we appreciate the fact that the lower court has discretion in the matter of allowing appeals, yet we feel that to justify such an order as was made in this case, there should be some substantial showing of benefit to the trust. We find no such showing made in this case. We hold that the order made by the court was not for the benefit of the trust and should have been denied. The case is affirmed on the appeal of Gordon R. Lunt, Willie C. Lunt, and Walter L. Lunt, as trustee and as individual. On the cross-appeal of Elba Lunt Van Gorden and Mattie Lunt Van Gorden the case is reversed. The costs of the appeal are taxed to Gordon R. Lunt, Willie C. Lunt and Walter L. Lunt.—Affirmed in part; reversed in part.

All JUSTICES concur.